JOSEPH J. GEMMA, JR., APPELLANT, v.
LOIS TAFLINE GEMMA, RESPONDENT.

No. 18821

August 23, 1989 778 P.2d 429

*Joseph and Daniel Foley Associates*, Las Vegas, for Appellant.

*Albright, Stoddard, Warnick & Albright*, Las Vegas, for Respondent.

---

[4]THE HONORABLE DAVID ZENOFF, Senior Justice, participated in this appeal in the place of then CHIEF JUSTICE E. M. GUNDERSON pursuant to this court's general order of assignment filed September 14, 1988.

## OPINION

By the Court, ROSE, J.:

The district court determined in this divorce action that the respondent Lois Gemma had a community property interest in her husband's, appellant Joseph Gemma, Jr., police retirement pension even though his pension rights had not vested, and that she could elect to receive pension benefits when appellant was first eligible to retire. Appellant objects to a nonvested pension interest being considered community property; and if it is, he opposes his former wife's ability to receive her share of benefits beginning when he is first eligible to retire. We reject appellant's contentions and hold that a nonvested pension interest acquired during marriage is community property and that it is not error to permit the nonemployee spouse to elect to receive those benefits when the employed spouse is first eligible to retire.

### FACTS

On January 2, 1980, appellant Joseph Gemma (Joseph) joined the Las Vegas Metropolitan Police Department. As a member of the department, Joseph is a participant in the Public Employees Retirement System of the State of Nevada.

Joseph and the respondent Lois Tafline Gemma (Lois) were married on May 9, 1981, in Las Vegas and on May 6, 1986, the parties entered into a property settlement agreement which disposed of all community property interests, except any interest Lois might have in Joseph's retirement plan. Any future interests in the other party's income or benefits ceased on the date of the agreement.

On January 8, 1988, the district court entered the divorce decree and divided the community property. The district court determined the parties' interest in Joseph's Public Employees Retirement System account to be a community asset and it

equally divided the benefits accrued during marriage between the parties.[1]

At the time of divorce, Joseph had reached the top salary level that a patrolman could achieve and the only pay increases he could expect were contractual raises agreed to by the Police Association and his employer. If no such raises were negotiated, Joseph's only pay increases would result from advancement in rank or promotions based on merit, application, testing, and acceptance.

Joseph's Public Employee Retirement benefits will become vested after ten years of service, or on January 2, 1990. *See* NRS 286.6793. As a police officer, Joseph is eligible to retire at age 50 if he has at least twenty years of service, or at age 55, if he has at least ten years of service. *See* NRS 286.510. A member whose pension is vested under the Public Employees Retirement System may retire before his eligible retirement date; however, in such event, his retirement benefit will be reduced by .5 percent for each month that the member is under the appropriate retirement age.

## LEGAL DISCUSSION

Retirement benefits earned during a marriage are community property. Walsh v. Walsh, 103 Nev. 287, 738 P.2d 117 (1987).

---

[1]Specifically, the court stated:

Each party shall receive ½ of the community share of said benefits which community share be determined by multiplying the benefits in question by a fraction, the numerator of which is the number of months during which the parties were married, the denominator of which is the number of months of time and service of the Plaintiff which he has in determining his said benefits. Once said benefits become due and payable, each party shall be entitled to receive his or her portion thereof directly. The Plaintiff shall further take no action to modify, or otherwise adversely affect the Defendant's interest in said benefits, without first obtaining the written approval of the Defendant. Upon Plaintiff's obtaining the age of 50 years, provided, he has twenty years of service time or more, or if he does not have at least twenty years of service time, then upon obtaining the age of 55 years, Plaintiff must pay to the Defendant, if Defendant so demands at that time and whether or not the Plaintiff has retired from the police force, the Defendant's community property interest in the subject pension plan, which is deemed to be the amount Defendant would be entitled to receive as her community share of the pension benefits pursuant to the formula set forth above if Plaintiff retired and elected to commence receiving his pension benefits. If Defendant does not elect to then start receiving her share of the benefits, then she shall thereafter receive her share of the benefits when Plaintiff retires from the police force, or when such benefits otherwise become payable.

This is so even though the retirement benefits are not vested. In re Marriage of Gillmore, 629 P.2d 1 (Cal. 1981); Laing v. Laing, 741 P.2d 649 (Alaska 1987); Van Loan v. Van Loan, 569 P.2d 214 (Ariz. 1977). Most retirement benefits are in the form of a pension and the types of pension plans vary widely. The fair division of this community asset is often not an easy task to accomplish, especially when the pension benefit has not vested and the parties have not been married for a lengthy period of time.

The district court allocated Joseph's pension by granting Lois one half of the pension benefits earned during the marriage. It accomplished this by holding that Lois was entitled to one half "of the amount of Mr. Gemma's eventual pension plan benefit multiplied by a fraction, the numerator of which is the number of months during which the parties were married, the denominator being Mr. Gemma's number of months of time in service on the police force."

Joseph objects because his retirement benefits will be based on his highest salary for thirty-six consecutive months during his career, and this period will, in all probability, be when he is at or near the end of his employment and substantially after the divorce. He asserts that a calculation based on his highest salary during the marriage would be more appropriate.

There are two general approaches used by courts in dividing defined pension benefits. The first is to determine the present value of the pension and award half to each spouse. This approach has the advantage of ending the parties' involvement with each other and finalizing the divorce immediately in all respects. Its drawbacks, however, are numerous. First, there might not be sufficient property owned by the employee spouse to cash out or make periodic payments to the nonemployee spouse. Second, the employee spouse is required to pay the community property interest in the pension plan immediately upon divorce, but he or she may not remain employed to actually enjoy the full benefits of the retirement pension or live until the time of vesting. Third, the nonemployee spouse may receive much less if the present value in the pension is substantially less than the actual vested value upon retirement. And fourth, it is often difficult to ascertain a pension's present value.

The second approach is the method used by the district court and is generally known as the "time rule." In re Marriage of Brown, 544 P.2d 561 (Cal. 1976); Berry v. Meadows, 713 P.2d 1017 (N.M.App. 1986); Laing v. Laing, *supra;* Woodard v. Woodard, 656 P.2d 431 (Utah 1982). Under this approach, a court declares the nonemployee spouse's nonvested community

property interest and directs when the interest shall be paid. This is occasionally accompanied by the court retaining jurisdiction until the benefits are vested and retirement payments begin. Objections to this method of division echo Joseph's assertions of error in this case. Cases that adopt the "time rule" answer the objections Joseph now puts forth by indicating that early contributions to the pension plan, while smaller, are invested and earned more interest, that the emphasis should be on the qualitative nature of the community interest as opposed to the quantitative interest, and that the early working periods are the building blocks to upward mobility and hopefully an increased salary.

The "time rule" approach is susceptible to formulation at the time of divorce, but payment of benefits are deferred. While no method is perfect, the advantages of the "time rule" clearly outweigh any other method of pension division. This method also divides the community property interest in the pension equally in accordance with NRS 123.225.

One complaint that Joseph asserts can be addressed by the district court retaining jurisdiction and hearing any claim of unfairness that might arise when the pension benefits are to begin. Joseph argues that he may substantially improve his pay by extraordinary effort in the future. Since this must occur, if at all, after his divorce from Lois, she would receive the increased retirement stipend, in part, because of his efforts and success after marriage. An even more compelling factual scenario could be imagined if the employee spouse attained an undergraduate or an advanced degree and received promotions within the same department, or transferred to an entirely new area of governmental service with an increased salary but remained within the coverage of the pension plan. While a substantial increase in retirement benefits related to work or achievement after the marriage, as opposed to the usual employment promotions and cost of living increases, will probably occur in only a few cases, it is a situation that will arise and is sufficiently important to be addressed by our courts.

The division of community property is usually final when made and the trial court loses jurisdiction to subsequently modify or adjust pension benefits thereafter, unless the parties subsequently agree to such modification (NRS 125.150(6)), or the court specifically retains jurisdiction. *See Walsh,* 103 Nev. at 288, 738 P.2d at 117. The district court here did not retain jurisdiction over the payment of pension benefits.

When a district court determines the community interests in a defined benefit pension plan, the "time rule" should be used to

make the calculation and the court should so state in the divorce decree. If the employee spouse believes that the income he or she will receive upon retirement will be a reflection of increased effort and achievement after the marriage, he or she can request that the court retain jurisdiction in the event such predictions become reality. If the district court retains jurisdiction and the increase due to post-marriage efforts does occur, the court then can hear and decide the employee spouse's claim. If the court agrees with the employee spouse, retirement benefits as calculated by the "time rule" and previously declared can be recalculated using the highest income the employee spouse would have received in the normal course of events, this being ordinary promotions and cost of living increases, in contradistinction to the increased income the employee spouse achieved because of his post-marriage effort and accomplishments.

The procedure for retaining jurisdiction over the payment of pension benefits will not add uncertainty in the initial calculation of the community interest by using the "time rule." Rather, it will provide a procedure to accommodate those relatively few cases where it would be inequitable for the nonemployee spouse to receive retirement benefits based upon a high salary level achieved by the employee spouse's post-marriage effort and achievement.

Joseph's second claim of error is that Lois should not be able to receive any pension benefits, even though they are vested, until he actually retires and begins to receive benefits or at his own election. This would place Joseph in a position to dictate, to a substantial degree, when Lois will begin to receive retirement benefits. The record does not reflect Joseph's age but it is probable that he could continue to work as a police officer for a decade after the date he is eligible to retire. We do not believe that Joseph should have such control over when Lois will begin to receive her community interest in retirement benefits.

In In re Marriage of Luciano, 164 Cal.Rptr. 93 (Ct.App. 1980), the trial court ordered that the nonemployee spouse must wait until the employee spouse actually retired before receiving retirement benefits. The court of appeals reversed and concluded that the nonemployee spouse should be able to determine when her benefits will begin once they become due and payable.

> To uphold the trial court's ruling as to the time Dorothy is to commence receiving her portion of this community asset would give Ferdinand the option of determining the receipt by Dorothy of her own property which would be basically unfair. The employee spouse cannot by election defeat the nonemployee spouse's interest in the community property by

relying on a condition solely within the employee spouse's control.

164 Cal.Rptr. at 95 (cited with approval in In re Marriage of Gillmore, 629 P.2d at 5).

The district court here properly ordered that Lois may elect to receive pension benefits at the time they become due and payable, this being defined in the divorce decree as the time when Joseph is first eligible to retire, and that Joseph shall take no action to modify or otherwise adversely affect Lois' interest in the benefits without first obtaining her written approval.

We affirm the district court in all respects, but remand the case to give the parties the opportunity to request that the district court retain jurisdiction of the payment of pension benefits; and, if such request is made by either party, for the district court to determine whether it will exercise its discretion and retain jurisdiction.

YOUNG, C. J., STEFFEN, SPRINGER, and MOWBRAY, JJ., concur.