OPINION
 

 Per Curiam:
 

 FACTS
 

 Mona Maureen Sertic (“Mona”) filed for a divorce from Mark
 
 *1194
 
 Steven Sertic (“Mark”). The Sertics had been married for approximately eleven years. The Sertics had one child — Ky lie Maureen Sertic, who was two years old at the time of divorce. After almost two years of motion disputes, the Sertics agreed on a parenting plan which included custody and visitation. At trial, the Sertics stipulated to the facts and the district court heard argument from the Sertics’ attorneys. The district court entered an order adopting the parenting plan and dividing the property.
 

 DISCUSSION
 

 Mona first argues that Mark should not have been compensated for his community interest in her pension at the time of trial. Instead, Mona argues, Mark should have had to wait until she was eligible to retire to receive his share of the community interest in her pension. We conclude that Mona’s argument may have merit. The district court did not err in distributing the pension at trial if the following conditions were met: (1) the district court could determine the present value of the community share of Mona’s pension with reasonable certainty; (2) there was sufficient existing funds to distribute Mark’s interest;
 
 [1]
 
 and (3) both parties agreed that the distribution would be the final distribution of the pension regardless of what might occur in the future.'
 
 [2]
 
 Because the district court erred in determining the present value and it is unclear from the record whether both parties agreed that the distribution at trial would be final, we reverse and remand as to this issue.
 

 Therefore, on remand, if the district court determines that the above requirements are not met, it may order distribution to Mark his community share of the pension as received by Mona upon her first eligibility to retire. If Mona does not elect to retire when she first becomes eligible, she shall be obligated to pay to Mark what he would have received if she had retired. In the case at bar, the district court has appropriately retained jurisdiction.
 

 
 *1195
 
 Mona also argues that the district court erred in determining the present value of the community share of her pension. The community share of a pension should be determined by using the “time rule.” Gemma v. Gemma, 105 Nev. 458, 462-63, 778 P.2d 429, 432 (1989). In
 
 Gemma
 
 we described the “time rule” as follows:
 

 Under this approach, a court declares the nonemployee spouse’s nonvested community property interest and directs when the interest shall be paid. . . .
 

 The “time rule” approach is susceptible to formulation at the time of divorce,
 
 but payment of benefits are deferred.
 
 While no method is perfect, the advantages of the “time rule” clearly outweigh any other method of pension division.
 

 Id.
 
 at 461-62, 778 P.2d at 431 (emphasis added).
 
 [3]
 

 Although
 
 Gemma
 
 does not specifically refer to the “wait and see” approach,
 
 [4]
 

 Gemma
 
 clearly mandated that the “wait and see” approach be used in measuring the actual value of the pension. The “wait and see” approach means that the share received by the pension holder’s spouse should be based on the value of the pension that would ultimately be received by the pension holding spouse and not on the pension received if the pension holding spouse were to retire at the time of the divorce.
 
 See
 
 Fondi v. Fondi, 106 Nev. 856, 859, 802 P.2d 1264, 1266 (1990).
 

 In
 
 Gemma
 
 and
 
 Fondi,
 
 we addressed an apparent problem of the “wait and see” approach: pension values are often based on the highest salary of the employee and that this salary is usually the amount earned just before retirement. Therefore, if the district court must measure the pension value on what the pension holding spouse would
 
 ultimately receive,
 
 the value of the community share of the pension is based in part on post-divorce labor. We noted, however, that the earlier years of employment are often the building blocks to upward mobility and a higher salary. Therefore, because the size of the full pension is based on earlier
 
 *1196
 
 community labor, the community should receive a share of this benefit.
 
 See Fondi,
 
 106 Nev. at 859-60, 802 P.2d at 1266.
 
 [5]
 

 The value of Mona’s pension should have been calculated in accordance with the rules set forth by the Civil Service Retirement System (“CSRS”). The CSRS requires that the highest average salary received during any three consecutive years of service of the employee is used to calculate the pension value. In the case at bar, each party had an expert valúate Mona’s pension. We conclude that the district court was correct in rejecting the conclusion of Mona’s expert because he failed to consider the “wait and see” approach as mandated in Nevada.
 

 Although Mark’s expert considered the “wait and see” approach by measuring the present value of the community share of the pension based on what Mona would ultimately receive, the district court concluded that Mark’s expert was incorrect in using Mona’s current annual salary to calculate her pension value. Specifically, the district court stated, “[A]s I understand the law and the rules of government pension, [Mark’s expert] should have used the average of the highest three [consecutive] years’ salary that Mrs. Sertic earned
 
 during the time of the marriage,
 
 so I will direct that [Mark’s expert] recalculate the value of the pension based on a recalculation of the base salary.” (Emphasis added.)
 

 Mark argues that this was error. We agree. In
 
 Gemma,
 
 this court concluded that where a pension’s value was based on the pension holding spouse’s highest salary for thirty-six consecutive months, the salary base should be determined during the pension holding spouse’s
 
 career
 
 and not during the marriage.
 
 See Gemma,
 
 105 Nev. at 461-63, 778 P.2d at 430-32. Accordingly, we conclude that the district court should have accepted the calculation of Mark’s expert if that calculation was based on the average of Mona’s highest three years of salary during her career and not during her marriage.
 
 [6]
 

 Mona also raised the issue of whether the district court erred by not giving her the child dependency exemption for federal tax purposes each year. The district court determined that “[t]he
 
 *1197
 
 parties shall alternate each year the personal exemption for the minor child for federal tax purposes with [Mona] taking the exemption for 1994.” We conclude that the district court did not err.
 

 Prior to January 1, 1985, divorce courts could allocate the dependency exemption to either the custodial or noncustodial parent.
 
 See, e.g.,
 
 Morphew v. Morphew, 419 N.E.2d 770 (Ind. Ct. App. 1981). However, in 1984 Congress, pursuant to the Tax Reform Act of 1984, P.L. No. 98-369, § 423(a), 98 Stat. 494, 799 (1984), amended I.R.C. § 152. Although the amendment directs that the custodial parent should receive the exemption, it provides several exceptions to this rule. One exception is that the custodial parent may waive the right to the exemption for any given year.
 

 Several jurisdictions have concluded that even after the 1984 amendment, district courts can allocate the exemption and require the custodial parent to execute the appropriate waiver for the IRS. In reaching this conclusion, the courts reasoned that the trial court’s allocation of the child dependency exemption did not interfere with the intent of the amendment.
 
 See, e.g.,
 
 Rohr v. Rohr, 800 P.2d 94 (Idaho Ct. App. 1989),
 
 aff’d in relevant part,
 
 800 P.2d 85 (Idaho 1990). We agree.
 

 This court briefly addressed this issue in Jensen v. Jensen, 104 Nev. 95, 753 P.2d 342 (1988). In
 
 Jensen,
 
 we concluded that the district court’s order requiring the wife to execute the necessary documents allowing the husband to claim the child dependency exemption was coercive equitable relief that was inappropriate because other legal remedies would have been adequate.
 
 See id.
 
 at 99, 753 P.2d at 345. This, however, should not be the result obtained in every case. In the case at bar, the Sertics share the custody of Kylie. In addition, the district court should have broad discretion over this matter.
 

 We also conclude that it is not overly burdensome to execute the appropriate documentation. The custodial parent must execute the release only one time. Thereafter, the burden is on the noncustodial parent to attach the release to his return on each alternate year that he is eligible to claim the exemption.
 
 See
 
 26 C.F.R. § 1.152.4T A-4 (1994).
 

 CONCLUSION
 

 We conclude that the district court erred in distributing Mona’s pension at the time of trial if the requirements set forth in this opinion were not met. If the requirements were not met, it is advisable that the district court retain jurisdiction to distribute the
 
 *1198
 
 pension after Mona’s first eligibility to retire. In addition, we conclude that the district court erred by using Mona’s salary during marriage to calculate the pension. Therefore, we reverse and remand as to these issues.
 

 Finally, we affirm the district court’s order to equally allocate the child dependency exemption. However, we direct the district court to require Mona to execute the appropriate documentation— if it has not already been mandated.
 

 We have considered the remaining arguments raised by each party and consider them to be without merit.
 

 [1]
 

 This requirement could have also been met if Mona had sufficient existing separate property to distribute to Mark his interest.
 

 [2]
 

 Mark looks to a footnote in Fondi v. Fondi, 106 Nev. 856, 802 P.2d 1264 (1990), to argue that the pension can be divided at the time of trial. In
 
 Fondi
 
 we concluded that the language of the “wait and see” approach does not mean that
 
 “actual division
 
 of the pension plan must wait until the employee spouse is able to retire[;] it is simply that the community share in the retirement plan must be measured using the pension
 
 received upon retirement." Fondi,
 
 106 Nev. at 859 n.1., 802 P.2d at 1266 n.1. However, division of the pension is not the same as actual distribution of the pension holding spouse’s current assets.
 

 [3]
 

 [Under the “time rule,”] the community interest is represented by a fraction, the numerator of which is the time the parties were married, the denominator is the total time worked before full retirement benefits may be received.
 

 Fondi v. Fondi, 106 Nev. 856, 859, 802 P.2d 1264, 1265-66 (1990) (citations omitted).
 

 [4]
 

 This phrase was coined during this court’s decision in
 
 Fondi.
 

 [5]
 

 In
 
 Gemma,
 
 we also concluded that if the pension holding spouse was worried that his or her high income after marriage may be a “reflection of increased effort and achievement, he or she can request that the court retain jurisdiction in the event such predictions become reality.”
 
 Gemma,
 
 105 Nev. at 463 , 778 P.2d at 432.
 

 [6]
 

 In the event Mona’s employment ceases prior to attaining the projected highest salary, retention of jurisdiction by the district court permits this problem to be addressed and the pension distribution be adjusted if appropriate.