929 P.2d 916 (1997)
Roberta Elwyn WOLFF, Appellant/Cross-Respondent,
v.
Gerhard Heinz WOLFF, Respondent/Cross-Appellant.
No. 26628.
Supreme Court of Nevada.
December 20, 1996.
Rehearing Denied March 5, 1997.
*917 Kevin H. Mirch, Reno, for Appellant/Cross-Respondent.
Skelly and Sheehan, Reno, for Respondent/Cross-Appellant.

OPINION
YOUNG, Justice:
Appellant Roberta Elwyn Wolff ("Roberta") and respondent Gerhard Heinz Wolff ("Gerhard") were married on June 18, 1982. On September 10, 1993, Roberta filed a complaint for divorce. On March 5, 1994, after a pre-trial settlement conference, Roberta and Gerhard entered into a written property settlement agreement.
The written property settlement agreement disposed of all the property rights, duties and obligations which Roberta and Gerhard had accumulated during their marriage except for Gerhard's retirement benefits. Roberta and Gerhard agreed to submit a stipulated statement of facts to the court, in addition to arguments regarding the appropriate disposition of those retirement benefits.
On November 1, 1994, the district court entered its decision regarding the disposition of Gerhard's retirement. On November 22, 1994, the district court entered its findings of fact and conclusions of law regarding its decision.
Roberta appeals the district court's decision, arguing that the district court erred by classifying pre-retirement payments as limited temporary spousal support and ordering Gerhard to pay less than Roberta's share of Gerhard's retirement benefits. Gerhard cross-appeals, arguing that the district court erred by (1) awarding limited temporary alimony to Roberta; (2) applying a fatally flawed formula for valuating community retirement benefits; (3) requiring Gerhard to purchase a life insurance policy, naming Roberta as beneficiary; (4) ordering that retirement benefits be paid to Roberta's estate if Roberta predeceases Gerhard; (5) not considering Roberta's payments into social security as an offset to her share of Gerhard's retirement benefits; and (6) improperly distributing community property because compelling reasons existed for an unequal distribution in Gerhard's favor.
*918 We conclude that each of Roberta's arguments has merit. Additionally, we conclude that Gerhard's argument regarding the district court's requirement that Gerhard must purchase a life insurance policy naming Roberta as beneficiary has merit. Accordingly, we reverse the district court's order, in part.

FACTS
Gerhard was first employed by the State of Nevada as a highway patrol officer on July 10, 1972. On June 18, 1982, nearly ten years after Gerhard began working for the Nevada Highway Patrol ("NHP"), Gerhard and Roberta were married. On September 10, 1993, Roberta filed for divorce.
On March 5, 1994, Gerhard and Roberta entered into a property settlement agreement. The agreement settled all disputes between the parties except the distribution of Gerhard's Public Employees Retirement System ("PERS") retirement account.
As of March 3, 1994, the effective date of the parties' divorce, Gerhard had accumulated a total of 21 years and 236 days, or 21.65 years, in his retirement account. The community acquired 11 years and 260 days, or 11.71 years, in Gerhard's retirement, thereby creating a fifty-four percent community interest in Gerhard's retirement.
On June 16, 1994, Gerhard's fiftieth birthday, Gerhard became eligible for his retirement benefits. However, Gerhard elected to continue working. Therefore, pursuant to Chapter 286 of the Nevada Revised Statutes, PERS could not pay Gerhard or Roberta retirement benefits because he still worked for NHP.
During the course of the marriage, Roberta was gainfully employed and contributed to social security. Gerhard, on the other hand, did not contribute to social security because of his state-sponsored retirement with PERS.
On November 1, 1994, the district court made its ruling regarding Gerhard's retirement benefits. That ruling was memorialized in the district court's November 22, 1994 findings of fact, conclusions of law and decree of divorce ("the decree"). The district court found that "[t]he community interest in [Gerhard's] Pension-Retirement benefit is $1,155.12 per month." The court further provided that "[a]ny benefits ordered to be paid by the Court, prior to [Gerhard's] actual retirement, will have to be paid from [Gerhard's] after tax earnings, from [Gerhard's] salary."
Because Roberta elected to immediately receive her portion of Gerhard's retirement benefits, the district court held that Roberta is entitled to receive her share of Gerhard's retirement on the date of Gerhard's eligibility for such benefits. Until such time, the district court ruled, Gerhard must provide a "reasonable equivalency" to Roberta.
According to the district court, an equivalency must reflect Gerhard's obligation to transfer to Roberta his vested community property interest in Roberta's social security benefits. Also, such equivalency was required to reflect that Gerhard is paying taxes on his post-marital revenues. Therefore, the district court ruled that the amount of Roberta's community share of Gerhard's retirement, when Gerhard is entitled to receive it, will never be less than $578.00 per month subject to minor fluctuations.
The decree further provided that Roberta "is awarded $450.00 per month as Limited Temporary Spousal Support, as a `reasonable equivalency' [to her present share of Gerhard's retirement benefits], until she dies or until [Gerhard] retires, whichever first occurs. [Roberta's] subsequent remarriage does not abrogate the Limited Temporary Spousal Support obligation." The decree further stated that "[Roberta's] vested Community Interest in [Gerhard's] Retirement does not terminate upon [Roberta's] death and continues to her estate until [Gerhard's] death." Additionally, the decree recognized that the $450.00 limited temporary spousal support payment was a "taxable consequence to [Roberta] and a taxable deduction to [Gerhard]."

DISCUSSION

Standard of review
In Shane v. Shane, 84 Nev. 20, 22, 435 P.2d 753, 755 (1968), we stated that "[b]efore the appellate court will interfere *919 with the trial judge's disposition of the community property of the parties or an alimony award, it must appear on the entire record in the case that the discretion of the trial judge has been abused." This court's rationale for not substituting its own judgment for that of the district court, absent an abuse of discretion, is that the district court has a better opportunity to observe parties and evaluate the situation. Winn v. Winn, 86 Nev. 18, 20, 467 P.2d 601, 602 (1970).

Designation of limited temporary spousal support
Roberta argues that her share of Gerhard's retirement benefits was improperly designated as limited temporary spousal support. We agree. In Walsh v. Walsh, 103 Nev. 287, 288, 738 P.2d 117, 117 (1987), we stated that "retirement benefits earned during the marriage are community property." In Carrell v. Carrell, 108 Nev. 670, 671, 836 P.2d 1243, 1244 (1992), we were faced with a similar situation as presented by the case at bar. In Carrell, recognizing that the wife's pension was worth less than the husband's pension, the district court required the husband to pay "spousal support" to the wife that "would result in a fifty/fifty division of the pensions." Id. The Carrell court concluded that
[a]s community property, retirement benefits are afforded certain rights which do not attach to spousal support awards. Specifically, community property is not subject to future modification whereas spousal support can be modified upon a change of circumstances, remarriage, or death. NRS 125.150(5), (7). Consequently, the district court erred when it characterized [the wife's] community property as "spousal support," thereby subjecting it to possible future modification.
Id.
We conclude that classifying Roberta's share of the community asset as limited temporary spousal support was an error because the spousal support award, unlike an interest in community property, is subject to possible future modification. See NRS 125.150(7).
In his cross-appeal, Gerhard argues that the award of limited temporary spousal support was improper because Roberta did not qualify for any kind of spousal support. As discussed above, we conclude that Roberta is clearly entitled to her portion of the community's interest in Gerhard's retirement. Further, the classification of that right as temporary limited spousal support was error. Accordingly, Gerhard's argument misinterprets the purpose of the district court's award, and therefore, we need not address this particular argument here.

Gerhard's obligation for Roberta's interest in his retirement
Roberta acknowledges that pursuant to the formula announced by this court in Gemma v. Gemma, 105 Nev. 458, 461, 778 P.2d 429, 431 (1989), the district court properly determined the community property interest in Gerhard's retirement as $1,155.12 per month. See also Sertic v. Sertic, 111 Nev. 1192, 1195, 901 P.2d 148, 149 (1995) (designating three factors to determine the propriety of distributing retirement pension at the time of divorce). However, Roberta argues that the district court arbitrarily reduced her monthly payment to $450.00, instead of $577.56.
We agree with Roberta's argument that the district court arbitrarily reduced Roberta's award. The district court did not adequately describe why it reduced Roberta's $577.56 interest in Gerhard's retirement to the $450.00 "reasonable equivalency" award for temporary spousal support. The decree merely stated that "[t]he taxable consequences of [Gerhard's] payments to [Roberta] have been considered in the `equivalency' amount [Gerhard] should pay to [Roberta], until [Gerhard] actually retires." We further conclude that Roberta's receipt of $450.00 violates the "equal distribution" presumption governing Nevada's community property laws. See NRS 125.150(1)(b).

Formula for valuating community retirement benefits
Gerhard's argues that the Gemma formula for valuating community retirement benefits is fatally flawed because it fails to apportion any passive appreciation of the sole and separate *920 portion of Gerhard's retirement during the time of the marriage. Gerhard urges that "such appreciation remains Gerhard's sole and separate property and must be deducted out before a community interest can be calculated."
We conclude that the Gemma formula for determining community interest in retirement benefits is not fatally flawed and has been extensively relied upon by this court in deciding other cases. See, e.g., Sertic, 111 Nev. at 1195, 901 P.2d at 149; Fondi v. Fondi, 106 Nev. 856, 859, 802 P.2d 1264, 1266 (1990). No Nevada case has recognized that the "passive appreciation" to the community interest in one spouse's retirement constitutes that spouse's separate property. The only case which Gerhard cites to support his contention, White v. White, 521 N.W.2d 874 (Minn.Ct.App.1994), does not come from a community property jurisdiction. Accordingly, we decline Gerhard's request to revisit the formula set forth in Gemma.

Purchase of life-insurance policy
The district court required Gerhard to purchase the life insurance policy at issue
if it is available to him, to cover lost benefits to [Roberta] in the event of [Gerhard's] death before actual retirement, only if PERS equivalent of a Qualified Domestic Relations Order (QDRO) does not protect her interest, and only if such term insurance is not prohibitively expensive.
We conclude that the district court abused its discretion by directing Gerhard to purchase the life insurance policy. First, Gerhard will be required to obtain, not maintain, an existing life insurance policy out of his own salary. The decree does not provide for a corresponding "equal" liability to Roberta. Accordingly, the district court's requirement that Gerhard expend money on the life insurance policy is an "unequal" distribution of debt. See NRS 125.150(1)(b). Second, if Gerhard dies before he retires from the NHP, Roberta may still be entitled to a portion of Gerhard's retirement from PERS. See NRS 286.6703. According to the rules governing the administration of a PERS retirement account, if a PERS member dies before the alternate payee begins receiving benefits and a refund of the contribution account is payable, the alternate payee will be eligible to receive benefits.

Roberta's survivorship rights
In the decree, the district court provided that "[Roberta's] vested Community Interest in [Gerhard's] Retirement does not terminate upon [Roberta's] death and continues to her estate until [Gerhard's] death." Gerhard argues that this provision violates "public policy, and, more specifically, [is] in direct conflict with the Public Employees Retirement System of Nevada."
Although a former spouse's estate is not encompassed by the definition of alternate payee in NRS 286.6703(4), we conclude that Roberta's estate should be entitled to her share of Gerhard's retirement benefits upon his death. Upon divorce, the community interest that Gerhard and Roberta had in Gerhard's retirement became the separate property of each former spouse. See 15A Am. Jur.2d Community Property § 101 (1976). Consequently, Roberta's estate is entitled to her portion of Gerhard's retirement in the event that Roberta predeceases Gerhard. Accordingly, the district court did not abuse its discretion by requiring Gerhard to pay Roberta's estate her share of the retirement benefits if Roberta predeceases Gerhard.

Roberta's social security payments
Gerhard argues that the district court "abused its discretion by not considering Roberta's social security payments as an offset to the PERS distribution." Without citing to any legal authority for support, Gerhard argues that the district court should not have refused to "look at any kind of offset for the amount of time, energy and money the community contributed to Roberta's Social Security benefits."
"Social security benefits to be received following the dissolution of marriage have been held not to be a form of deferred compensation, and therefore not to be community property subject to division between the spouses." Charles C. Marvel, Annotation, Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement *921 of Property Rights Between Spouses, 94 A.L.R.3d 176 (1979); see also Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372-73, 4 L.Ed.2d 1435 (1960) (finding that the Social Security Act did not create either property or contractual rights); In re Marriage of Nizenkoff, 65 Cal.App.3d 136, 135 Cal.Rptr. 189, 190 (1976) (finding that social security retirement benefits are the separate property of the spouse receiving them); In re Marriage of Kelley, 64 Cal.App.3d 82, 134 Cal.Rptr. 259, 267 (1976) (finding that social security retirement benefits are not deferred compensation and that its federal statutory scheme is in conflict with a state court exercising jurisdiction to award these benefits as community property). Accordingly, social security benefits, or the payments used to derive those benefits, cannot be divided in a property settlement agreement.
Further, they cannot be given any consideration in "offsetting" one spouse's community property interest in the other spouse's retirement benefits. Hisquierdo v. Hisquierdo, 439 U.S. 572, 588-89, 99 S.Ct. 802, 811-12, 59 L.Ed.2d 1 (1978). "An offsetting award, however, would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his benefit check.... Any such anticipation threatens harm to the employee, and corresponding frustration to federal policy, over and above the mere loss of wealth caused by the offset." Id. The district judge specifically stated that he was not awarding an offset of Roberta's social security benefits when he reduced her monthly allowance from the community property PERS pension. However, he did consider Roberta's social security payments in the decree. Calling a duck a horse does not change the fact it is still a duck. "Considering" Roberta's social security benefits does not change the fact that this is still an offset, and therefore, error. See Olson v. Olson, 445 N.W.2d 1, 7 (N.D.1989) (holding that social security cannot be considered, distributed, or offset in marital property divisions); Marriage of Swan, 301 Or. 167, 720 P.2d 747, 751, 752 (1986) (holding that family courts cannot consider the social security benefits of either spouse when dividing marital property).
For the foregoing reasons, we conclude that the district court erred by reducing Roberta's community property interest in Gerhard's PERS pension when it considered her payments to social security, despite the court's attempt to deny this as an "offset." However, the district court was correct when it designated each party's social security as their separate property.

Compelling reasons for unequal distribution
Gerhard's final argument is that "[c]ompelling reasons exist for an unequal distribution of the community assets" in favor of Gerhard. In support of this contention, Gerhard notes that "Roberta's earning potential is double that of Gerhard's. Roberta, during the marriage, became educated, experienced and skilled at her career of mortgage brokering. Gerhard is, and was[,] a Nevada Highway Patrolman. While Roberta's income skyrocketed, Gerhard's income only moved upward on the State's schedule."
We conclude that because this argument was not presented to the district court for consideration, this issue is considered waived on appeal. See Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

CONCLUSION
For the reasons stated above, we conclude that the district court abused its discretion by classifying Roberta's interest in Gerhard's retirement benefits as limited temporary spousal support and by ordering Gerhard to pay Roberta less than her share of Gerhard's retirement benefits. Further, we conclude that the district court improperly required Gerhard to purchase life insurance for Roberta's benefit. Accordingly, we reverse the district court's decree with respect to these issues and remand for additional proceedings consistent with this opinion. In all other respects, the decree is affirmed.
STEFFEN, C.J., and SPRINGER and SHEARING, JJ., concur.
ROSE, J., dissents.
*922 ROSE, Justice, dissenting:
I realize that by federal law and court decision present or future payments of social security benefits cannot be transferred, assigned, or subject to any legal process. 42 U.S.C. §§ 407(a), 662(c) (1994); Olson v. Olson, 445 N.W.2d 1 (N.D.1989); Marriage of Swan, 301 Or. 167, 720 P.2d 747 (1986). My concern is that the transfer/assignment prohibition has been unduly extended by state courts as in Olson and Swan to prohibit any consideration of a party's social security benefits when a state court is dividing property in a divorce. I do not find this mandated by federal law or United States Supreme Court decision.
Although a dollar for dollar offset of anticipated social security benefits against a spouse's award would violate federal law, I find no mandate that would preclude a court, in its equitable determinations, from merely considering the fact that one spouse is likely to receive federal retirement benefits.
The prohibition of any consideration of social security benefits accrued by one party during marriage usually creates an inequity in the division of property between divorcing parties. When one party has a state or private pension and the other person has accrued social security benefits, the person with a state or private pension fares poorly in property division when compared to the other party.
This case is a good example of my concern. Gerhard has a vested state pension, and that portion accrued during marriage is community property that presumptively is to be divided equally. Walsh v. Walsh, 103 Nev. 287, 288, 738 P.2d 117, 117 (1987). During Roberta's career, she was making more than $100,000 a year and has accrued substantial social security benefits to be paid to her in the future. Granted, Gerhard might share in some of the social security benefits accumulated by Roberta because the parties were married for over ten years, after he reaches age 62 so long as he remains unmarried. By the inability to consider Roberta's social security benefits that should be substantial when she reaches sixty-five, we have a situation where one spouse is compelled by state law to share his pension benefits acquired during marriage and the other is not. Roberta gets one-half of Gerhard's pension, and the lion's share of the social security benefits that will accrue. Gerhard gets one-half of his pension and the modest amount that the social security system may grant him as Roberta's former spouse. This seems patently unfair to me.
Nevada law directs that, to the extent practicable, community property is to be divided equally, but an unequal division can be made for compelling reasons. NRS 125.150. I would consider the inequity presented in this case as a compelling reason; and I see no reason why a district judge cannot look at the totality of circumstances as directed by Nevada law and consider the benefits one party may derive in the future from accrued social security benefits. This is not an assignment or set-off of social security benefits, but rather it is a recognition of the assets the parties presently have or benefits they can reasonably anticipate receiving in the future, and it will prevent one party from reaping a windfall and the other suffering a hardship merely because of the type of pension benefits received from employment.
I do not think the district court's modest reduction in monthly payment should be considered an "offset" of future social security benefits. In fact, I would remand the case to the district court to divide all separate and community property equitably after considering the totality of facts, and this, of course, includes Roberta's substantial accrued social security benefits that she will reap in the future.