130 Nev., Advance Opinion 79

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| KRISTIN E. HENSON,<br>Appellant,<br>vs.<br>HOWARD HALE HENSON,<br>Respondent. | No. 62654 |



FILED

OCT 02 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order modifying a qualified domestic relations order and denying appellant's motion for a judgment on pension payment arrearages. Second Judicial District Court, Family Court Division, Washoe County; Bridget Robb Peck, Judge.

*Affirmed.*

Todd L. Torvinen, Reno; Richard F. Cornell, Reno,
for Appellant.

Rodney E. Sumpter, Reno,
for Respondent.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, J.:

In this appeal, we are asked to consider whether a nonemployee spouse is entitled to survivor benefits if, in a divorce decree,

___

[1]The Honorable James W. Hardesty, Justice, voluntarily recused himself from participation in the decision of this matter.

14-32741

he or she is allocated a community property interest in the employee spouse's Public Employees Retirement System (PERS) pension plan. We are also asked to consider whether the nonemployee spouse must file a motion in the district court to immediately begin receiving his or her community property interest in the PERS pension plan when the employee spouse has reached retirement eligibility but has not yet retired.

We hold that, unless specifically set forth in the divorce decree, an allocation of a community property interest in the employee spouse's pension plan does not also entitle the nonemployee spouse to survivor benefits. We further conclude that, because there are varying times at which a nonemployee spouse may elect to begin receiving his or her portion of the community property interest in the employee spouse's pension benefits, the nonemployee spouse must first file a motion in the district court requesting immediate receipt of those benefits.

## FACTS AND PROCEDURAL HISTORY

Howard Henson and Kristin Henson were married in September 1984. The parties filed for divorce in November 1992, and in July 1995, the district court entered a divorce decree resolving community property and support issues. Of interest in this case, the court applied the "time rule" and the "wait and see" approach, in accordance with *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429 (1989), and *Fondi v. Fondi*, 106 Nev. 856, 802 P.2d 1264 (1990), to divide Howard Henson's PERS pension equally between the parties. The parties, however, did not provide to PERS, at that time, documentation or information so that Kristin's interest in Howard's PERS retirement account could eventually be disbursed.

At the request of Kristin and without notice to Howard, the district court entered a qualified domestic relations order (QDRO)

pursuant to NRS 286.6768 on January 21, 1999, regarding Kristin's interest in Howard's PERS pension benefits. The QDRO recognized Howard as the participant in PERS, Kristin as the alternate payee, and the existence of the alternate payee's right to receive a portion of Howard's benefits. Paragraph 8, section B of the QDRO also mandated that PERS pay Kristin, in accordance with NRS 286.590(1), "FIFTY PERCENT (50%) multiplied by the number of the Participant's years of credited service in PERS earned during the marriage divided by the number of his total years of credited service." Under paragraph 8, Kristin was allocated a portion of Howard's pension, including a survivor beneficiary interest, upon a selection of Option 2 under NRS 286.590.

Paragraph 10 of the QDRO further provided that "[i]f the Participant dies before the Alternate Payee begins receiving benefits in accordance with the Plan selected and a distribution of contributions is available from the account of the Participant, the Alternate Payee shall receive 50 [percent] of the available distributed refund." Finally, paragraph 11 of the QDRO provided that the district court would retain "jurisdiction to amend th[e QDRO] for the purpose of establishing or maintaining its qualification, or for purposes of subsequent modification or amendment as required."

Howard has remarried, and the language in the QDRO precludes him from designating his current spouse as his survivor beneficiary. Therefore in 2011, Howard filed a motion to modify the QDRO. Howard argued that the QDRO originally entered by the district court in 1999 did not effectuate the division in the divorce decree because it gave Kristin a survivor beneficiary interest. Kristin opposed the motion and moved for a judgment awarding her the community property pension

payments she could have received since the time Howard became eligible to retire. Kristin claimed that Howard was eligible to retire and receive his PERS benefits in June 2003 but he elected not to retire at that time, and therefore, he was required to pay her the portion of his PERS benefits that she would have received since June 2003. The district court granted Howard's motion to modify the QDRO and denied Kristin's motion for judgment. This appeal followed.

## DISCUSSION

In resolving this appeal, we must consider whether the district court's amended QDRO was an impermissible modification of the divorce decree's division of community property. We further consider whether the district court erred when it denied Kristin's motion to reduce to judgment the amount she could have received as her community property interest in Howard's PERS pension benefits since he was eligible to retire in 2003.

*The amended QDRO was not an impermissible modification of the divorce decree's division of property*

The parties disagree over whether the divorce decree allowed Kristin to be named as Howard's survivor beneficiary, and thus, the parties disagree whether the district court's modifications to the QDRO impermissibly altered the divorce decree's property division. Kristin argues that the divorce decree intended her to be the alternate payee and the survivor beneficiary because the order specifically applied the "time rule" and "wait and see" approaches. Kristin further contends that NRS 286.6703, the statute setting forth the requirements for a QDRO, permits a former spouse to be named as a survivor beneficiary and that NRS 286.6768, which addresses the PERS requirements for survivor benefits, only requires that the employee spouse have 10 years of service at death,

not at the time the QDRO is entered.[2] Howard argues that the divorce decree did not designate Kristin as the survivor beneficiary, and that the district court's order amending the QDRO effectuated the divorce decree.[3] Howard further contends that the first QDRO did not conform to the divorce decree because the election of Option 2 under NRS 286.6768(1)(b) expanded Kristin's interest into a lifetime benefit and precluded him from designating his new spouse as his survivor beneficiary.

---

[2]NRS 286.6768 states, in pertinent part, as follows:

> 1. Except as otherwise provided in subsection 2 and as limited by subsection 4, the survivor beneficiary of a deceased member who had 10 or more years of accredited contributing service is entitled to receive a monthly allowance equivalent to that provided by:
>
> . . . .
>
> (b) Option 2 in NRS 286.590, if the deceased member had 15 or more years of service on the date of the member's death.

[3]Howard also argues on appeal, and the district court found, that Kristin failed to serve him with proper notice when the QDRO was initially entered. We agree. NRCP 5(a) requires that "every written motion . . . , and every written notice, appearance, demand, offer of judgment, designation of record on appeal and similar paper shall be served upon each of the parties." And, while the district court entered the amended QDRO because it concluded that Howard did not receive proper notice or have time to respond when the QDRO was entered, that the QDRO contained legal and factual errors, and that PERS was enforcing the QDRO in a manner that was both inequitable and outside the scope of the divorce decree, "[t]his court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason." *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. ___, ___, 245 P.3d 1198, 1202 (2010).



The relevant portion of the divorce decree provides as follows:

> [T]he PERS account is divided equally between the parties. Unless the parties agree otherwise, the pension will be divided in accordance with the "time rule" and the "wait and see" approach set forth in *Gemma v. Gemma*, 105 Nev. 458, 778 P.2d 429 (1989) and *Fondi v. Fondi*, 106 Nev. 856, 802 P.2d 1264 (1990).

Because a district court's interpretation of a divorce decree presents a question of law, this court reviews such an interpretation de novo. *See Ormachea v. Ormachea*, 67 Nev. 273, 291-92, 217 P.2d 355, 364-65 (1950) (providing that a district court's construction and interpretation of the legal operation and effect of one of its divorce decrees presents a question of law); *Nev. Classified Sch. Emps. Ass'n v. Quaglia*, 124 Nev. 60, 63, 177 P.3d 509, 511 (2008) ("We review questions of law de novo."); *see also In re Georgakilas*, 956 A.2d 320, 321 (N.H. 2008) ("In interpreting the meaning of a divorce decree, we review the decree *de novo*.").

Pursuant to the "time rule" set forth in *Gemma*, the district court must state in the divorce decree what interest, if any, the nonemployee spouse is to receive in a nonvested retirement pension and must "direct[ ] when the interest shall be paid." 105 Nev. at 461-62, 778 P.2d at 431. The "time rule" permits the nonemployee spouse to receive his or her community share of the employee spouse's pension based upon the percentage of time the employee spouse was married and earning the pension.[4] *Id.* at 461, 778 P.2d at 431. The "wait and see" approach

---

[4]The community share of retirement benefits under the "time rule" is usually calculated by taking the actual pension plan, multiplying it by a fraction—the numerator is the number of months married and the denominator is total number of months worked and earning the pension—

*continued on next page...*

dictates that the community receives "an interest in the pension *ultimately received by the employee spouse*, not simply the pension that would be recovered were the spouse to retire at the time of divorce." *Fondi*, 106 Nev. at 859, 802 P.2d at 1266 (citing *Gemma*, 105 Nev. at 462, 778 P.2d at 432). Thus, the formula provided for under the "time rule" does not apply until the pension is distributed. *Id.*

When modifying the QDRO here, the district court cited NRS 125.155(1) in concluding that the value of the community property interest in the PERS pension benefits must be based upon the number of years Howard was employed and earning the pension and not on the value of "'any estimated increase in the value'" (quoting NRS 125.155(1)). The district court further reasoned that, pursuant to NRS 286.6768, Kristin could not have a survivorship interest in the pension because Howard did not accrue a survivor beneficiary interest during the marriage. Therefore, the amended QDRO provides that PERS is to pay Kristin "as if [Howard] selected 'Option 1' with regard to his pension benefit. However, [Howard] can choose a retirement option and beneficiary, upon retirement, with the benefit to [Kristin] being calculated based on an unmodified benefit."

Initially, we note that the district court improperly relied on NRS 125.155(1) in amending the QDRO because that statute was not in effect when the divorce decree was entered.[5] Therefore, we must consider

---

*...continued*
and then dividing the resulting number by two. *Gemma v. Gemma*, 105 Nev. 458, 460 n.1, 461, 778 P.2d 429, 430 n.1, 431 (1989).

[5]NRS 125.155 became effective on July 5, 1995, which was after the parties' divorce decree was entered in June 1995 but before entry of the QDRO in January 1999. 1995 Nev. Stat., ch. 576, § 1, at 1968. NRS 125.155(3) provides that "[i]f a party receives an interest in or an
*continued on next page...*

whether the divorce decree awarded Kristin a survivor beneficiary interest because a QDRO must conform to the divorce decree. *Shelton v. Shelton*, 201 S.W.3d 576, 580 (Mo. Ct. App. 2006). We have previously concluded that a former spouse is entitled to a percent of the pension "*ultimately received by the employee spouse*," *Fondi*, 106 Nev. at 859, 802 P.2d at 1266, and neither the divorce decree nor the QDRO here based its award on an "estimated increase in value." The divorce decree did not specifically award Kristin a survivor beneficiary interest; rather, the divorce decree specified that the pension would be "divided in accordance with the 'time rule' and the 'wait and see' approaches pursuant to *Gemma* and *Fondi*." Thus, Kristin would have only been entitled to a survivor beneficiary interest in Howard's pension under the divorce decree if we were to

---

*...continued*

entitlement to a pension or retirement benefit which the party would not otherwise have an interest in . . . if not for a [divorce] disposition . . . , that interest or entitlement terminates upon the death of either party." The only exceptions to this rule are when, pursuant to "[a]n agreement of the parties[,] or . . . [a]n order of the court, a party who is a participant in [PERS] . . . provides an alternative to an unmodified service retirement allowance." NRS 125.155(3)(a)-(b). Thus, under NRS 125.155(3), any interest in a PERS pension plan will terminate upon death unless a survivorship interest is specifically awarded.

Nevertheless, because statutes apply prospectively unless clearly indicated otherwise by the Legislature, *Madera v. State Industrial Ins. Sys.*, 114 Nev. 253, 257, 956 P.2d 117, 120 (1998), and nothing in the legislative history suggests that the Legislature intended NRS 125.155 to apply retrospectively, NRS 125.155 does not apply here, and the division of the community property interests in the PERS pension benefits is controlled by the divorce decree. Therefore, the underlying issue of whether a former spouse can take a survivor beneficiary interest in a PERS pension plan only arises in divorce decrees entered before July 5, 1995.

Supreme Court
OF
Nevada

(O) 1947A

8

interpret the term "pension" in this case to also include a survivor beneficiary interest. We decline to do so.

Pursuant to NRS 286.551, PERS first calculates the employee spouse's unmodified service retirement allowance—the amount the retired employee will receive monthly from PERS for the rest of his or her life. The employee spouse is permitted, as was the case in 1995, to select a number of alternatives to the unmodified service retirement allowance, some of which may include a survivor beneficiary interest. NRS 286.590. If the employee spouse selects an option with a survivor beneficiary interest, then the employee spouse's monthly retirement allowance decreases. *See, e.g.*, NRS 286.590(1) (providing that an employee can choose a reduced monthly service retirement allowance that will continue to be paid to the employee's beneficiary after the employee's death). The employee spouse, however, is not required to select an option with a survivor beneficiary interest. *See* NRS 286.590. Thus, neither the employee nor the nonemployee spouse automatically receives a survivor beneficiary interest, and the only pension benefit the nonemployee spouse is guaranteed to receive is his or her community property interest in the unmodified service retirement allowance calculated pursuant to NRS 286.551 and payable through the life of the employee spouse.

In this situation, in order for the QDRO to effectuate the divorce decree, Kristin's community property interest in Howard's pension should have been calculated pursuant to the formula set forth in *Gemma*, 105 Nev. at 461, 778 P.2d at 431. If Howard elects to choose an option that includes a survivor beneficiary other than Kristin, and therefore lower his monthly retirement allowance, it should have no impact on the amount Kristin receives as her portion of the community property interest

in Howard's PERS benefits. Because the divorce decree did not explicitly provide Kristin with a survivor beneficiary interest, she is not entitled to one, and thus, the original QDRO improperly designated Kristin as Howard's survivor beneficiary. Therefore, we conclude that the amended QDRO correctly effectuates the divorce decree's division of property.[6]

*The district court did not err in denying Kristin's motion for judgment*

Kristin argues that the district court erred when it denied her motion to reduce to judgment the amount that she was entitled to receive of her interest in Howard's PERS pension benefits since 2003. She contends that Howard was required to pay her those benefits upon his retirement eligibility pursuant to *Sertic v. Sertic*, 111 Nev. 1192, 1194, 901 P.2d 148, 149-50 (1995) (stating that an alternate payee former spouse may claim his or her interest in the employee spouse's pension when the employee spouse is eligible to retire). Howard argues that *Sertic* is inapplicable because Kristin was asking for arrearages in payments that Howard was not required to pay.

This court has previously addressed when a nonemployee former spouse has a right to his or her share of the community property

---

[6]Because we conclude that the district court's amended QDRO did not modify the parties' interests in the community property as provided in the divorce decree, we need not address Kristin's argument that the district court lacked jurisdiction to enter the amended QDRO. *See generally In re Water Rights of the Humboldt River*, 118 Nev. 901, 906, 59 P.3d 1226, 1229 (2002) (explaining that a court has an inherent power to enforce its orders); *see also Smith v. Smith*, 100 Nev. 610, 614, 691 P.2d 428, 431 (1984). Further, as the district court has jurisdiction to enter an order enforcing its previous orders, we need not address Kristin's argument regarding the timeliness of Howard's motion to modify the QDRO.

portion of the employee former spouse's pension and concluded that the nonemployee spouse may receive his or her share at the time of the divorce trial, when the employee spouse is eligible to retire even if the employee spouse does not retire, or when the employee spouse actually retires. *Gemma*, 105 Nev. at 460 n.1, 778 P.2d at 430 n.1; *Fondi*, 106 Nev. at 860, 802 P.2d at 1266; *Sertic*, 111 Nev. at 1194, 901 P.2d at 149. In *Sertic*, this court considered whether the district court erred when it valued and distributed to the nonemployee spouse his community property interest in the employee spouse's pension at the time of the divorce trial instead of valuing the pension as received by the employee spouse when she first became eligible to retire. 111 Nev. at 1194, 901 P.2d at 149. The *Sertic* court concluded that the district court may allow a nonemployee spouse to receive his or her community property interest in the pension plan at the time of the divorce trial if: (1) the district court can determine with reasonable certainty the party's present community share of the pension plan, (2) the district court can determine whether there are sufficient existing funds, and (3) the parties agree that the distribution would be the final distribution. *Sertic*, 111 Nev. at 1194, 901 P.2d at 149. Because in *Sertic* the district court failed to consider these requirements, this court remanded the matter to the district court, stating that, if the court determined that the requirements were not met, it

> may order distribution to [the nonemployee spouse] his community share of the pension as received by [the employee spouse] upon her first eligibility to retire. If she does not elect to retire when she first becomes eligible, she shall be obligated to pay to [the nonemployee spouse] what he would have received if she had retired.

111 Nev. at 1194, 901 P.2d at 149.

In remanding, the *Sertic* court relied on this court's conclusion in *Gemma* that upon the employee spouse's eligibility to retire, "[the employee spouse] must pay to the [nonemployee former spouse], if [the nonemployee former spouse] *so demands at that time* and whether or not the [employee spouse] has retired . . . , the [nonemployee former spouse's] community property interest in the subject pension plan." 105 Nev. at 460 n.1, 778 P.2d at 430 n.1 (emphasis added). Because the nonemployee spouse is required to demand payment if the employee spouse has yet to retire, the employee spouse does not have to pay the nonemployee spouse his or her interest in the pension plan until such demand is made. *Id.* Further, because the pension benefit at the time of the employee spouse's retirement will have likely increased, *see Fondi,* 106 Nev. at 860, 802 P.2d at 1266, the nonemployee spouse may choose to wait until the employee spouse retires to share in the increased value of the pension plan. *See In re Marriage of Gillmore,* 629 P.2d 1, 7 (Cal. 1981) (explaining that the nonemployee spouse may choose to wait and "thereby ensure some protection for the future and may be able to share in the increased value of the pension plan").

Therefore, the value of the pension plan is calculated at the time of distribution. Because the nonemployee spouse may elect to receive his or her community interest in the pension plan at different times, we now take this opportunity to clarify in what manner a former nonemployee spouse can elect to immediately begin receiving his or her portion of the employee spouse's pension benefits upon the employee spouse's retirement eligibility, and how the district court should determine the community property interest in the employee spouse's pension plan.

The California Supreme Court has concluded that a nonemployee spouse has no right to payment of his or her community interest in the employee spouse's pension benefits prior to making a motion for disbursement of these benefits. *In re Marriage of Cornejo*, 916 P.2d 476, 479 (Cal. 1996). The *Cornejo* court considered four possible dates upon which the nonemployee spouse would be entitled to immediate payment of his or her share of the pension benefits:

> (1) the date of the employee spouse's eligibility to retire; (2) the date of a demand by the nonemployee spouse preceding the filing of a motion seeking immediate payment; (3) the date of the filing of such a motion; and (4) the date of the issuance of an order passing thereon.

*Id.* The court reasoned that the employee spouse will be liable for pension payments to the nonemployee spouse on the date that the nonemployee spouse files a motion with the court seeking immediate payment of his or her portion of the benefits because the motion "clearly constitutes the non-employee spouse's choice of immediate payment. And it clearly puts the employee spouse on notice." *Id.* The court concluded that filing the motion was a formal, unambiguous act, which would provide a fixed date from which the court could order direct immediate payment. *Id.* at 479-80.

We are in agreement with California's approach to the distribution of a nonemployee spouse's portion of his or her community interest in an employee spouse's pension plan benefits. We thus conclude that the nonemployee spouse must file a motion in the district court requesting to immediately begin receiving payment of his or her portion of the employee spouse's pension benefits. The district court must then determine the present value of the employee spouse's pension plan

SUPREME COURT
OF
NEVADA

(O) 1947A

13

benefits, depending upon when the nonemployee makes his or her election, before determining the amount the nonemployee spouse will receive.

In this case, Kristin never filed a motion in the district court requesting immediate payment of her portion of Howard's pension benefits before she moved for judgment based on Howard's failure to pay those benefits.[7] Because Howard was under no duty to pay Kristin her portion of his pension benefits until she filed a motion to receive her share, the district court did not err in denying Kristin's request to reduce to judgment the amount of Howard's PERS pension benefits she would have received since June 2003.

## CONCLUSION

We conclude that the district court's amendment of the QDRO was not an impermissible modification since it correctly effectuates the divorce decree's division of property. We also clarify that the nonemployee spouse must file a motion in the district court requesting immediate payment of his or her portion of the employee spouse's pension benefits before he or she is eligible to receive payment, if the employee spouse has yet to retire. Thus, we conclude that the district court correctly denied Kristin's motion for judgment because Howard was under no duty to pay Kristin her portion of his pension benefits until Kristin filed a motion requesting immediate payments.[8]

---

[7]Based on our conclusions in this opinion, we do not address Howard's arguments regarding Kristin's miscalculation of her portion of his pension.

[8]Having considered the parties' remaining arguments concerning waiver, the lack of an evidentiary hearing, Howard's failure to join PERS as a party to his motion, and the parties' prior settlement agreement, we conclude that they lack merit.

Accordingly, we affirm the district court's order modifying the QDRO and denying Kristin's motion for judgment.

_____, J.
Cherry

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Saitta