Emma J. TRAHAN, Appellant,

v.

Jack F. TRAHAN, Appellee.

No. 03–93–00607–CV.

Court of Appeals of Texas, Austin.

March 8, 1995.

Rehearing Overruled April 5, 1995.

Philip C. Friday, Jr., Austin, for appellant.

William R. Travis, Austin, for appellee.

Before POWERS, JONES and B.A. SMITH, JJ.

POWERS, Justice.

Jack F. Trahan sued Emma Trahan, his former wife, for declaratory judgment that a 1983 final judgment, partitioning between them Jack's right to military retired pay, had become invalid and unenforceable because of a subsequent, retroactive amendment to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408(c)(1) (West 1983 & Supp.1994). The trial court awarded him declaratory relief to that effect. Emma appeals. We will reverse the trial-court judgment and render judgment that the 1983 judgment is a final, valid, subsisting, and enforceable judgment.

## THE CONTROVERSY

Emma and Jack were married from September 1943 until their first divorce on January 22, 1963. They remarried on October 28, 1970, and were again divorced on May 7, 1971. Neither divorce decree disposed of Jack's right to military retired pay. On February 14, 1977, Emma filed a partition action in which the district court concluded that 77.92% of Jack's right to retired pay was community property which should have been divided at divorce. The court partitioned the

right to retired pay. This trial-court judgment was affirmed in part and modified in part in *Trahan v. Trahan*, 609 S.W.2d 820 (Tex.Civ.App.—Texarkana 1980), *rev'd*, 626 S.W.2d 485 (Tex.1981). Jack filed an application for writ of error to the Supreme Court of Texas. While the application was pending, the United States Supreme Court decided the case of *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that federal law precluded a state court's partition of military non-disability retired pay pursuant to state community property laws. Following *McCarty*, the Texas Supreme Court reversed the judgment of the court of appeals and rendered judgment for Jack. *Trahan v. Trahan*, 626 S.W.2d 485 (Tex.1981).

On September 8, 1982, Congress enacted 10 U.S.C.A. § 1408, the Uniformed Services Former Spouses' Protection Act ("USFSPA"). The statute effectively nullified the *McCarty* decision and allowed states to apply their own community property laws as they had done before *McCarty*.[1]

On February 10, 1983, Emma again filed a suit to partition Jack's pension benefits. The 200th District Court of Travis County, in cause number 344,539, awarded Emma 38.96% of Jack's retired pay from June 25, 1981. This judgment was appealed and affirmed in *Trahan v. Trahan*, 682 S.W.2d 332 (Tex.App.—Austin 1984, writ ref'd n.r.e.), *cert. denied*, 475 U.S. 1002, 106 S.Ct. 1171, 89 L.Ed.2d 291 (1986) (appeal dismissed for want of a substantial federal question).

On November 5, 1990 Congress amended the USFSPA ("1990 amendment"), resulting in the instant dispute. The portion of the amendment in controversy reads as follows:

(c)(1) ... A court may not treat retired pay as property in any proceeding to divide or partition any amount of retired pay of a member as the property of the member and the member's spouse or former spouse if a final decree of divorce, dissolu-

tion, annulment, or legal separation (including a court ordered, ratified, or approved property settlement incident to such decree) affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.

10 U.S.C.A. § 1408(c)(1) (West Supp.1994). The effective date section of the 1990 amendment states:

The amendment made by subsection (a) [amending subsection (c)(1) of section 1408] shall apply with respect to judgments issued before, on, or after the date of the enactment of this Act [Nov. 5, 1990]. In the case of a judgment issued before the date of the enactment of this Act, such amendment shall not relieve any obligation, otherwise valid, to make a payment that is due to be made before the end of the two-year period beginning on the date of the enactment of this Act [Nov. 5, 1990].

Pub.L. No. 101–510, § 555(e), 104 Stat. 1569, 1570 (1990), *amended by* Pub.L. No. 102–190, § 1062(a)(1), 105 Stat. 1475 (1991).

Based on the 1990 amendment, the trial court nullified the 1983 judgment affirming the partition of Jack's military retirement benefits and enjoined any payments after November 5, 1992. Emma brings four points of error.

## HOLDINGS AND DISCUSSION

In her first two points of error, Emma complains (1) the trial court erred in failing to hold that res judicata barred reopening the 1983 judgment regardless of the 1990 amendment, and (2) the trial court's retroactive application of the 1990 amendment to a valid judgment of a Texas court is unconstitutional under the due process clause of the United States Constitution. In essence, Emma argues she obtained a vested property

---

1. As enacted in 1983, § 1408(c)(1) of the USFSPA provided:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 [date of the *McCar-*

*ty* decision], either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C.A. § 1408(c)(1) (effective Feb. 1, 1983).

right under the 1983 partition judgment, which right could not later be confiscated without compensation. Jack responds by citing the congressional intent behind enactment of the 1990 amendment and concludes that res judicata and the prohibition against retrospective laws do not apply in this case because a service member's right to military retired pay never vests.

## Congressional Intent

■ Despite several decisions to the contrary,[2] it is now apparent that the original USFSPA, as enacted in 1982,[3] was not intended to apply retroactively. *See* John B. McKnight, *Closing the McCarty–USFSPA Window: A Proposal for Relief from McCarty–Era Final Judgments*, 63 Tex.L.Rev. 497, 512 (1984).[4] In first enacting the USFSPA, Congress did not intend for courts to allow the reopening of divorce cases that had become final before the *McCarty* decision. *Redus v. Redus*, 852 S.W.2d 94, 96 (Tex.App.— Austin 1993, writ denied). The legislative history reveals:

> The committee is concerned because some state courts have been less than faithful in their adherence to the spirit of the law [USFSPA]. The reopening of divorce cases finalized before the Supreme Court's decision in *McCarty v. McCarty* that did not divide retired pay continues to be a significant problem. Years after final di-

vorce decrees have been issued, some state courts ... have reopened cases (through partition actions or otherwise) to award a share of retired pay. Although Congress has twice stated in report language that this result was not intended, the practice continues unabated. Such action is inconsistent with the notion that a final decree of divorce represents a final disposition of the marital estate.

H.R.Rep. No. 665, 101st Cong., 2d Sess. 279, *reprinted in* 1990 U.S.C.C.A.N. 2931, 3005.

The legislative intent behind the original enactment of the USFSPA and cases examining the doctrine of res judicata as it applied to the 1983 version of the USFSPA, however, are not dispositive of whether the express statutory language in the 1990 amendment, giving rise to retroactive application, displaces the doctrine of res judicata. Before the 1990 amendment, the USFSPA did not contain any language mandating retroactive application.

In enacting the 1990 amendment, the intent of Congress to cure an unintended interpretation of the USFSPA by the courts is abundantly clear. "The amendment ... *shall* apply ... to judgments issued *before*, on, or after the date of the enactment of this Act." Pub.L. No. 101–510, § 555(e), 104 Stat. 1569, 1570 (1990), *amended by* Pub.L. No. 102–190, § 1062(a)(1), 105 Stat. 1475

---

**2.** Cases permitting retroactive application include: *Trahan v. Trahan*, 682 S.W.2d 332 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (res judicata only applies to legislation then existing), *cert. denied*, 475 U.S. 1002, 106 S.Ct. 1171, 89 L.Ed.2d 291 (1986) (dismissed for want of a substantial federal question) (citing *State v. Powell*, 134 S.W. 746 (Tex.Civ.App.1910, writ ref'd)); *Powell v. Powell*, 703 S.W.2d 434 (Tex.App.—Waco 1985, writ ref'd n.r.e.) (enactment of USFSPA created a change in law and suit not barred by res judicata), *cert. dism'd*, 476 U.S. 1180, 106 S.Ct. 2911, 91 L.Ed.2d 541 (1986) (dismissed for want of a substantial federal question). *See also Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 950 (Tex.1990) ("[R]es judicata is not a defense in a subsequent action if there has been a change in the material facts, the applicable statutory law, or the decisional law between the first judgment and the second suit."). However, these cases did not reflect the majority view. *See Segrest v. Segrest*, 649 S.W.2d 610 (Tex.1983) (*McCarty* decision did not require retroactive application to divorce decrees final-

ized before decision), *cert. denied*, 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983); *Breen v. Breen*, 693 S.W.2d 495 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (res judicata applied to bar collateral attack after *McCarty* decision, but before USFSPA); *Allison v. Allison*, 690 S.W.2d 340 (Tex.App.—Fort Worth 1985) (USFSPA was permissive and res judicata barred subsequent reopening of litigation), writ ref'd n.r.e., 700 S.W.2d 914 (Tex.1985).

**3.** The USFSPA was enacted on September 8, 1982 and became effective on February 1, 1983.

**4.** McKnight cites portions of the Conference Committee Report for the proposition that the USFSPA was not intended to re-open final adjudication of divorce decrees. "[T]he courts should not favorably consider applications based on the enactment of this title to reopen cases finalized before the *McCarty* decision wherein military retired pay was not divided." H.R.Rep. No. 749, 97th Cong., 2d Sess. 165, *reprinted in* 1982 U.S.C.C.A.N. 1569.

(1991) (emphasis added). The last sentence of the effective date paragraph is also inescapably retroactive and mandatory. "[J]udgment[s] issued *before the date of the enactment . . . shall not* relieve any obligation, otherwise valid, to make a payment that is due to be made before the end of the two-year period beginning on the date of the enactment of this Act." *Id.* (emphasis added). The intent evident in this paragraph is that section 1408(c)(1) applies to final judgments issued before the 1990 USFSPA amendment and suspends any further payment to be made pursuant to a final judgment after November 5, 1992, two years after the enactment of the amendment.

Furthermore, the Code of Federal Regulations reinforces the assertion that the amendment was intended to affect valid court judgments.

> A modification on or after June 26, 1981, of a court order that *originally* awarded a division of retired pay as property before June 26, 1981, may be honored for subsequent court-ordered changes made for clarification, such as the interpretation of a computation formula in the original court order. For court orders issued before June 26, 1981, subsequent amendments after that date to provide for a division of retired pay as property are *unenforceable. . . .*

32 C.F.R. § 63.6(c)(7) (1993) (emphasis added).

### Res Judicata

▮▮▮ We must now determine whether the amendment to the USFSPA preempts application of the Texas common law doctrine of res judicata. The supremacy clause of the U.S. Constitution orders that a congressional enactment preempts all inconsistent state legislation if conflicts exist between state and federal law. U.S. Const. art. VI, cl. 2. *See generally,* Richard P. Shafer, *Federal Preemption of State Authority Over Domestic Relations—Federal Cases,* 70 L.Ed.2d 895, 897 (1983). The field of domestic relations is generally a matter of state law, and the United States Supreme Court has consistently recognized that when Congress passes general legislation, it rarely intends to dis-

place state law in that particular area. *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (citing *Rose v. Rose,* 481 U.S. 619, 628, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987) and *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979)). Federal law will only preempt state law in the area of domestic relations "where enforcement of state law will cause major damage to clear and substantial federal interests." Shafer, *supra,* at 897.

▮▮▮ Whether federal law preempts state community property laws is quite a different question from whether the USFS-PA preempts the common law doctrine of res judicata. The Supreme Court in *Mansell,* after examining the legislative intent of the USFSPA and the precise language of the Act, addressed the issue of federal preemption of state community property laws while noting expressly that it had no jurisdiction to decide whether the doctrine of res judicata should have barred the reopening of pre-*McCarty* settlements since that was a matter of *state law. Mansell,* 490 U.S. at 586 n. 5, 109 S.Ct. at 2028 n. 5. The Supreme Court of Texas, in *Berry v. Berry,* 786 S.W.2d 672 (Tex.1990), followed the *Mansell* opinion. In *Berry,* the court reversed a court of appeals decision that retroactively applied a federal law, rendering a Texas divorce decree unenforceable. The subsequent enactment of the USFSPA cannot be used to attack collaterally a final divorce decree. *Berry,* 786 S.W.2d at 673. If the court rendering the partition judgment had jurisdiction over the parties and the subject matter of the suit, the court's judgment is not void, but only voidable. A final divorce decree thus may not be collaterally attacked even if it is later found to be erroneous or voidable. *Id.; Humble Oil & Refining Co. v. Fisher,* 253 S.W.2d 656, 661 (Tex.1952); *see also Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). If a final judgment is voidable as opposed to void, the doctrine of res judicata applies. *Segrest,* 649 S.W.2d at 613 (Tex.1983).

There are instances where, under the supremacy clause, a *state divorce decree* must give way to clearly conflicting federal enactments. *See Ridgway v. Ridgway,* 454 U.S.

46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981). In *Ridgway*, the court found that provisions of the Servicemen's Group Life Insurance Act of 1965, giving an insured service member the right to freely designate and alter the beneficiaries named under the contract, prevail over and displace a constructive trust for the benefit of the service member's children imposed upon the policy proceeds by a state-court divorce decree. *Id.* at 54–60, 102 S.Ct. at 54–61. However, the court clearly distinguished the *Ridgway* situation, where the service member possessed an absolute individual right to designate the policy beneficiary, from the situation in which community property was at stake. In *Ridgway*, the service member would not have been able to "impose[ ] his will upon property in which his wife had a distinct vested community property interest." *Id.* at 59–60, 102 S.Ct. at 57.

Few Texas cases specifically address the retroactive effect of the 1990 amendment and the doctrine of res judicata. *See Sutherland v. Cobern*, 843 S.W.2d 127 (Tex.App.—Texarkana 1992, writ denied); *Knowles v. Knowles*, 811 S.W.2d 709 (Tex.App.—Tyler 1991, no writ). In *Sutherland*, the court addressed the issue of whether the 1990 amendment barred a subsequent reopening of litigation. In that case, the court determined that since the original pre-*McCarty* divorce decree classified the serviceman's retired pay as a divisible community asset, the USFSPA, as amended, did not preclude a post-USFSPA partition suit. *Sutherland*, 843 S.W.2d at 130. The court never addressed the issue of res judicata, however, because the court concluded that the service member was estopped from asserting the issue. In *Knowles*, the court affirmed a trial-court judgment denying the partition of military retired pay that had already been disposed of in a final divorce decree. *Knowles*,

811 S.W.2d at 716. The application of the 1990 amendment, however, was wholly consistent with the doctrine of res judicata.

### Vested Rights

██ Whether the doctrine of res judicata controls is dependent on whether Emma had a vested right[5] in the retired pay pursuant to the partition action.

██ The Texas constitution prohibits retroactive laws.[6] Tex. Const. art. I, § 16. A statute is retroactive, and thus prohibited, if it impairs vested rights acquired under existing laws. *International Sec. Life Ins. Co. v. Maas*, 458 S.W.2d 484, 490 (Tex.Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.). Generally, retroactive laws are regarded with disfavor. *Deacon v. City of Euless*, 405 S.W.2d 59, 61 (Tex.1966). A statute is presumed to be prospective unless it is clear from a fair reading of the statute that the legislature intended it to apply to both past and present controversies. *Ex Parte Abell*, 613 S.W.2d 255, 258 (Tex.1981); *Coastal Indust. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.*, 563 S.W.2d 916, 918 (Tex.1978); *State v. Humble Oil & Ref. Co.*, 141 Tex. 40, 169 S.W.2d 707 (1943).

██ Private rights of parties which have become vested under a judgment cannot be taken away without compensation by a subsequent legislative act. *Inman v. Railroad Comm'n*, 478 S.W.2d 124, 128 (Tex.Civ. App.—Austin 1972, writ ref'd n.r.e.); *Jenckes v. Mercantile Nat'l Bank*, 407 S.W.2d 260 (Tex.Civ.App.—Dallas 1966, writ ref'd n.r.e.). A final judgment settles all rights adjudicated between the parties and the substantive rights vindicated therein are vested rights. *Arnold v. City of Sherman*, 244 S.W.2d 880, 883 (Tex.Civ.App.—Dallas 1951, writ ref'd).

---

5. Courts often manipulate the concept of "vested rights." Some legal scholars describe the term "vested right" as little more than a conclusion and assert that vested rights are only those rights which the court decides should be protected. *See* Bryant Smith, *Retroactive Laws and Vested Rights*, 5 Tex.L.Rev. 231 (1927); Bryant Smith, *Retroactive Laws and Vested Rights II*, 6 Tex. L.Rev. 409 (1928); George D. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 62 (1977).

6. Article I, section 16 of the Texas constitution provides: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." Only three states have unqualified constitutional provisions prohibiting retroactive legislation: Colorado, Tennessee, and Texas. Norman J. Singer, *Statutes and Statutory Construction* § 41.12 n. 7 (5th ed. 1992).

Jack cites *Brannon v. Randmaa*, 736 S.W.2d 175 (Tex.App.—Austin 1987, writ denied), *cert. denied*, 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 222 (1988), for the proposition that because military retirement pensions are gratuities allocated by Congress and can be altered by Congress, a service member's right to retired pay never vests. Therefore, if Jack does not have a vested right in his military retired pay, a fortiori, Emma cannot possess a vested right to any part of such pay. The *Brannon* decision is distinguishable from the present cause because in *Brannon* there was no final judgment involving a division of military retired pay. The service member in *Brannon*, who was divorced in 1977, argued that he had a vested right in his retired pay pursuant to the 1981 *McCarty* decision, which right could not be taken away by the subsequent federal enactment of the USFSPA. *Id.* at 176. The service member's right to retired pay was not adjudicated in his favor. He had attempted to freeze the law at the particular time the law favored him. The court determined that the service member "never acquired a vested, *permanent* right to *sole* enjoyment of his retirement benefits before Congress enacted the USFSPA." *Id.* at 178 (emphasis added).

The court further stated: "It is true that the effect of the opinion in *McCarty* was to delcare [sic] the benefits to be solely [the service member's], but the Supreme Court just as certainly could not vest in [the service member] *for all time* the uninterrupted right to those benefits." *Id.* at 178. Rather obviously, the *Brannon* court used the word "vested" in the sense that the court was powerless to give the right a permanence that Congress had not given it. In addition, the *Brannon* court reaffirmed that military retired pay is subject to division upon divorce as a vested community property right even if the present right to the pay had not fully matured. *Id.* at 177 (citing *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976)); *see also Taggart v. Taggart*, 552 S.W.2d 422 (Tex. 1977).

## CONCLUSION

The 1983 trial-court judgment, affirmed by this court in 1984, awarded Emma the legal right to 38.96 percent of Jack's right to retired pay from September 30. With our decision in that case, her right vested. Res judicata barred re-opening the issue of whether she possessed such a right. Any subsequent amendment of USFSPA did not destroy that right. We hold accordingly and conclude that the trial court erred in its declaratory judgment. We therefore sustain Emma's first two points of error, reverse the trial-court judgment, and render judgment that the 1983 judgment of the 200th District Court of Travis County, Texas, in cause number 344,539, styled Emma J. Trahan vs. Jack F. Trahan, is a valid, subsisting and enforceable judgment.

Owing to our holdings and orders above, we need not reach Emma's third and fourth points of error.