1999 PA Super 36

**Mark M. ADAMS, Appellant,**

v.

**Mayuree ADAMS, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1998.

Filed Feb. 19, 1999.

Bradley L. Griffie, Carlisle, for appellant.

Robert J. Mulderig, Carlisle, for appellee.

Before JOHNSON, HUDOCK, and HESTER, JJ.

HESTER, Judge:

¶ 1 Mark Adams, Husband, appeals from the February 24, 1998 order in which the trial court order determined he had breached a marital separation agreement (agreement) with Mayuree Adams, Wife, and awarded her attorney's fees and court costs. The trial court concluded the agreement required Husband to pay the full amount of his eligible monthly military pension *without* any offset for a pay-cap imposed by federal law for military retirees employed by the federal government. We affirm.

¶ 2 The record reveals the following. Husband was employed as a reserve commander in the Naval Reserves of United States and served on continued temporary active duty. Husband and Wife married on November 15, 1969, separated, and then they executed the relevant agreement on October 8, 1991. Paragraph 3.8 of the agreement provided (emphasis added):

*Pension, Retirement Accounts.* The parties acknowledge that Husband is currently serving as an officer in the United States Navy and will be eligible for retirement with full military retirement benefits on or after September, 1991. **Upon Husband's retirement, Husband shall promptly file or apply for his full retirement benefits from the United States Navy** and Wife shall share in Husband's pension as described below:

**A. 'Disposable Retirement Pay' as used herein, shall include all military retirement benefits to which Husband is entitled reduced only by the survivor benefit plan premium if any for Wife and before any waiver for benefits received in lieu of Husband's military retirement benefits, together with any cost-of-living increases or similar increases that occur after retirement.**

B. Wife shall receive that portion of Husband's Disposable Retirement Pay as determined by multiplying a coverture fraction, of which the numerator shall be NINETEEN (19) years and the denominator shall be the total number of years of service credited toward Husband's retirement benefits, times FIFTY (50%) PERCENT of Husband's Disposable Retirement Pay retirement benefit to which Husband is due at the time of retirement and thereafter.

C. Husband shall elect a survivor's benefit plan annuity which shall assure and pay to Wife a sum equal to her share of the pension as calculated in subparagraph B above, in the event of his death and continuing for the remainder of Wife's life. Wife shall be obligated to pay that proportion of the costs as calculated by the formula set forth in paragraph 3.8B above of the lowest costing benefit plan available to Husband, whether that be the Survivor's Benefit Plan through Husband's retirement from the military or an independent benefit plan. In the event Husband chooses, a plan that is actually of greater expense, Wife's obligation toward payment of that expense shall never be greater than that proportion of the costs as calculated by the formula set forth in paragraph 3.8B

above as applied to the Survivor's Benefit Plan through Husband's military retirement.

. . . .

E. The parties acknowledge that Husband's military retirement benefits are marital property and that the provisions of this paragraph are intended simply to divide that marital asset and do not work or constitute an exchange of assets and that the payments to Wife pursuant to this paragraph shall not constitute alimony, spousal support, or the like, but shall be deemed only to be the division of a marital asset.

¶ 3 The agreement was incorporated but not merged into a divorce decree granted by the trial court on December 27, 1991. The trial court entered a qualified domestic relations order (QDRO) to implement the agreement. At the end of 1991, Husband retired from the United States Navy with twenty-one years of qualifying service and began receiving his pension.

¶ 4 The trial court in its Pa.R.A.P.1925(b) opinion noted that thereafter Husband had applied for and received a veteran's disability pension that reduced the gross amount of his retirement pay by the amount of veteran's disability pay since the federal government deducts disability pay before calculating eligible military retirement pay. Yet, Husband benefited from this offset in that he received the veteran's disability pay free from income tax. The trial court had determined in interpreting Paragraph 3.8A that Wife was to receive fifty percent of Husband's disposable retired pay *reduced only* for the pro-rated cost of providing surviving spouse benefit plan insurance protection to Wife. This percentage actually became forty-six percent of the pay under Paragraph 3.8B of the agreement due to application of a coverture fraction representing the years of marriage to the total years of Husband's qualifying military service. The trial court, accordingly, had required Husband to pay the full amount of his eligible military retirement pay as calculated without deduction for the veteran's disability pay offset. Husband did not file an appeal from this determination.

¶ 5 Husband worked for Digital Equipment for one year following his retirement from the naval service. He then attempted self-employment by forming his own defense acquisition consulting company. In 1993, Husband began working for the federal civil service in a position that mirrored the same responsibilities that he last had held while on active duty with the navy. Husband subsequently was awarded pay increases from level G.S. 15, Step 1 to G.S 15, Step 5.

¶ 6 In late 1997, the United States Department of Defense awarded Husband the title and position of Assistant Undersecretary of Defense. This title did alter his job responsibilities significantly but made his position part of the federal senior executive service, thereby allowing future pay increases up to the G.S. 17 level. Husband's pay scale now is keyed to the pay of the United States Congress rather than the federal civil service and now approximates $109,000 annually. However, when this salary is added to Husband's military retirement pay, he exceeds the dual compensation pay-cap limitation imposed by law for federal civil service employees who also draw military retirement pay. *See* 5 U.S.C.S. § 5532.

¶ 7 As a result, Husband opted to off-set and reduce his military retirement pay to bring his total remuneration within the mandated pay-cap. The federal government subtracts this offset prior to determining Husband's eligible military monthly retirement pay. Wife, who through a QDRO receives part of Husband's monthly military pay as determined after this amount has been calculated, receives correspondingly less money each month. Wife alleged her portion of Husband's monthly retirement pay declined from $887.00 to $109.19 per month.

¶ 8 On November 5, 1997, Husband filed a declaratory judgment action requesting the trial court to interpret the provisions of the agreement governing the amount of military retirement monthly pay he owes to Wife. The trial court conducted an evidentiary hearing on January 29, 1998. The trial court determined that Husband owed Wife fifty percent of his eligible monthly retirement pay multiplied by the coverture factor calculated without regard to any offset reduction to fit

within the federally mandated pay-cap. Husband argued this approach disregarded the federal definition of disposable retired pay as set forth in 10 U.S.C.S. § 1408(a)(4), which provides:

    (4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—

      (A) are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

      (B) are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-martial or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38;

      (C) in the case of a member entitled to retire pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list); or

      (D) are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section.

¶ 9 The trial court noted in its opinion that it previously had determined in the divorce action that the parties had agreed to a more restrictive definition than that made by the federal government. They did so without regard to the federal government's requirement that a reduction in Husband's military retirement pay was a precondition to receipt of veteran's disability benefits. The trial court applied the same reasoning to deny Husband a reduction in retirement pay owed to Wife to reflect the reduction in his pension benefits required to meet the pay-cap imposed for dual government compensation of military retirees. Indeed, the trial court noted Husband voluntarily elected to reduce his pension payments rather than his current salary. This appeal followed.

¶ 10 Husband first argues the trial court erred by interpreting the agreement rather than just the QDRO. He argues Wife receives the full amount due under the QDRO that mandated payment of a certain percentage of the monthly military retirement pay he receives. He notes the reduction to meet his dual compensation pay-cap is made by the federal government before a calculation is made to determine his monthly retirement pay. He accuses the trial court of modifying the QDRO through its interpretation of the agreement in order to reach a sympathetic result that avoids economic harm to Wife when he sought only interpretation of the QDRO in the declaratory judgment action.

¶ 11 Our standard of review is clear. In *Fred E. Young, Inc. v. Brush Mountain*, 697 A.2d 984, 987 (Pa.Super.1997), we stated:

When reviewing the decision of the trial court in a declaratory judgment action, our scope of review is narrow. *O'Brien v. Nationwide Mutual Insurance Co.*, 455 Pa.Super. 568, 573, 689 A.2d 254, 257 (1997). Consequently, we are limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion, *Walker v. Ehlinger*, 544 Pa. 298, 300 n. 2, 676 A.2d 213, 214 n. 2 (1996).

The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. Where the trial court's factual determinations are adequately supported by the evidence we may not substitute our judgment for that of the trial court.

An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evi-

dence or the record, discretion is abused." *Rudick v. Rudick*, 441 Pa.Super. 558, 657 A.2d 1307, 1310 (1995).

¶ 12 We reject Husband's argument. Husband promised in the agreement to pay Wife the monthly retirement pay calculated without any reduction whatsoever except one-half of the amount to fund the surviving spouse's insurance benefit plan protection. The trial court properly interpreted its final decree as including not only the QDRO also but the agreement that it incorporated into the divorce decree. The final order at issue is the divorce decree; not just the QDRO. The trial court then determined that Husband breached the agreement by voluntarily electing to reduce his military retirement pay rather than his salary to meet the federal dual pay-cap mandate. This reduction exceeded a reduction to pay for one-half of the surviving spouse's benefit plan insurance as contemplated by the agreement. Moreover, by reducing his pension rather than his salary, Husband is receiving his salary in lieu of his pension, which is marital property. Separate property obtained in exchange for marital property is subject to the jurisdiction of the divorce court. 23 Pa.C.S. 3501(a)(4). Since we find the trial court's conclusion is supported by the record and there is no evidence of bias or partiality by the trial court in the record, we do not find an abuse of discretion by the trial court.

¶ 13 Next, Husband argues that the trial court erred by requiring him to use post-separation earnings to pay the mandated amount that exceeds fifty percent of his eligible retirement pay multiplied by the coverture factor as provided in the agreement. He asserts that by ordering him to pay Wife more than the percentage of his monthly eligible military retirement pay set forth in the agreement, the trial court, in effect, is attaching his post-separation earnings that are not subject to its jurisdiction. Accordingly, he contends the court's action constitutes a violation of our Domestic Relations Code.

¶ 14 We disagree. The trial court is not attaching post-separation earnings of Husband. It merely is enforcing the terms of the agreement in which he bound himself to

pay Wife a specified percentage of his military pension without any reduction or offset other than the one designated. Husband chose to reduce his military pension to satisfy the limitation on income imposed by the dual compensation law. This reduction of his monthly military retirement pay was not contemplated by the agreement, and he chose this option rather than reducing his current compensation. Further, as noted previously, he chose to receive his salary in lieu of his pension. Therefore, the trial court correctly concluded there is no basis in the agreement to reduce his eligible retirement pay since this reduction was not made to fund one-half of the surviving spouse's insurance plan benefit.

¶ 15 Finally, Husband argues that his disposable military retirement pay must be construed in accordance with federal law which dictates that both the veterans' disability pay and a reduction to meet federal dual compensation pay-cap must be deducted before calculating the monthly military disposable retirement pay due to him. He asserts the trial court abused its discretion by not referring to federal law in determining how much of his monthly military retirement pay is owed to Wife.

¶ 16 This argument must be rejected. As noted by the trial court in its opinion, Husband agreed to a more restrictive definition of eligible military retirement pay than the one recognized by the federal government. He promised not to make a waiver or accept any offset of his pension eligibility other than the amount deducted to fund one-half the survivor's benefit plan insurance. Consequently, the trial court correctly decided Husband is bound to this mutually agreed upon and more restrictive definition of "**eligible**" disposable military retirement pay. He agreed to pay based on that definition without regard to unilateral subsequent waivers or offsets he initiated that the federal government then deducted to make its calculation of his eligible monthly military retirement pay. Husband is bound under the agreement to the terms as defined in the agreement.

¶ 17 Lastly, Husband argues the trial court erred in imposing attorney's fees and costs in

829

this declaratory judgment action. He asserts a legitimate question of statutory interpretation existed, and he sought to comply with mandates of the dual compensation law. He claims the statute is not entirely clear with respect to its application to military retirement pay in a divorce action. Therefore, he argues the trial court erred in determining he is responsible for Wife's attorney fees and all court costs in connection with the declaratory judgment action after finding he breached the agreement.

¶ 18 We reject this argument. Imposition of attorney's fees and court costs is within the discretion of the trial court. The trial court makes decisions regarding alimony, equitable distribution, and assessment of fees at its discretion, and we will not disturb these decisions unless the trial court plainly abused that discretion. *Chaney v. Chaney*, 343 Pa.Super. 77, 493 A.2d 1382 (1985). Husband cannot avoid this law simply because he instituted a civil action for declaratory judgment. This matter concerns equitable distribution and is subject to the rules concerning the same. Instantly, the trial court determined that Husband breached the clear terms of the agreement by seeking off-sets to his retirement pay not contemplated by the agreement, which limited off-sets to funding one-half of the insurance benefit plan for the surviving spouse. Any further reductions Husband claimed were unilateral on his part and in violation of the agreement. Consequently, we find the record supports the trial court's decision to impose on Husband the responsibility of paying Wife's attorney's fees and all court costs associated with the declaratory judgment action; we will not disturb that decision.

¶ 19 Order affirmed.