MARYANN C. SHELTON, nka MARYANN C. MITCHELL, Appellant, v. ROLAND A. SHELTON, Respondent.

No. 37483

October 29, 2003                                                  78 P.3d 507

*Amesbury & Schutt* and *David C. Amesbury,* Las Vegas, for Appellant.

*Leavitt Law Firm* and *Glenn C. Schepps,* Las Vegas, for Respondent.

Before Agosti, C. J., Shearing and Becker, JJ.

## OPINION

By the Court, Shearing, J.:

The principal issue in this appeal is whether relief is available to a former spouse when a veteran unilaterally waives his military pension in order to receive disability benefits, resulting in the former spouse's loss of her community share in the pension. We conclude that, although courts are prohibited by federal law from determining veterans' disability pay to be community property, state law of contracts is not preempted by federal law. Thus, respondent must satisfy his contractual obligations to his former spouse, and the district court erred in denying former spouse's motion solely on the basis that federal law does not permit disability pay to be divided as community property.

### *FACTS*

Respondent Roland Shelton and appellant Maryann Shelton were married on September 6, 1980, in San Diego, California. Roland

served in the United States Navy for more than ten years during the marriage. On January 17, 1997, the Sheltons jointly petitioned for a summary decree of divorce in Clark County District Court. On January 29, 1997, the district court entered a decree of divorce incorporating the parties' joint petition.

Under the terms of the agreement, the parties designated both Roland's military retirement pay and military disability pay as community property, although the agreement awarded all of the disability pay to Roland. The parties, who negotiated the terms without the aid of counsel, agreed that Roland, individually, would be allotted "half of [his] military retirement pay in the amount of $500 and military disability pay in the amount of $174." Maryann would be allotted the other "half of HUSBAND'S military retirement pay in the amount of $577, until her demise."[1] At the time of the divorce, Roland had an outstanding military pension of $1,000 per month, and a disability payment of $174 per month based upon a determination that he was ten percent disabled. Both Roland and Maryann waived any right to spousal support; however, Maryann remained as beneficiary under Roland's military retirement insurance.

Beginning in January 1997, Roland regularly made his required payments to Maryann. In 1999, the Department of Veterans Affairs reevaluated Roland's disability status and concluded that Roland was 100 percent disabled, effective May 1, 1998. Roland elected to waive all his military retirement benefits for an equivalent amount of tax-exempt disability pay as federal law allows.[2] Upon receiving notice of an increased disability rating on February 26, 1999, Roland ceased his payments to Maryann.

Thereafter, Maryann moved the district court for an order enforcing the decree of divorce. Maryann asked for half of Roland's military pension, or $577, as had been agreed upon before the divorce and as was incorporated in the divorce decree. Roland opposed Maryann's motion on the grounds that the divorce decree did not allocate disability pay to Maryann, and that federal law prohibited community property division of veterans' disability benefits. The district court denied Maryann's motion on the basis of the United States Supreme Court's decision in *Mansell v. Mansell* (*Mansell I*),[3] despite repeatedly stating how unfair the result was to Maryann. In *Mansell I*, the Supreme Court held that federal law prevents states from treating military disability pay as divisible community property.[4] The district court also refused to grant

---

[1]Despite the purported equal division, the numerical disparity between the respective portions of military retirement pay was never addressed.

[2]38 U.S.C. § 5305 (2000).

[3]490 U.S. 581 (1989).

[4]*Id.* at 594-95.

Maryann equitable relief for the loss of her $577 monthly income on the basis that it lacked jurisdiction to hear a request for alimony when alimony had been waived in the final divorce decree.

## DISCUSSION

Domestic relations are generally within the purview of state courts.[5] However, in *McCarty v. McCarty,* a 1981 decision, the United States Supreme Court construed federal statutes to prevent state courts from treating military retirement pay as community property.[6] The United States Supreme Court reasoned that federal preemption was necessary as the federal government was interested in maintaining military retirement schemes as an inducement for enlistment and re-enlistment and for effective military personnel management.[7] In response to the broad preemption ruling in *McCarty,* Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA) in 1982.[8] The USFSPA authorizes state courts to divide "disposable retired pay" among spouses in accordance with community property law.[9] Although the USFSPA clearly subjected military retirement pay to community property laws, it did not clearly address whether disability benefits were also subject to state community property or equitable distribution laws.

Subsequently, in *Mansell I,* the Supreme Court considered whether state courts may treat veterans' disability benefits as community property. The Court initially noted that "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay."[10] The Court then held that under USFSPA's "plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay [which includes disability pay] as community property."[11] Because Roland elected to receive full disability pay in lieu of his

---

[5]*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 581 (1979).

[6]453 U.S. 210, 232-35 (1981); *see also Mansell I,* 490 U.S. at 584 (discussing *McCarty*).

[7]*McCarty,* 453 U.S. at 213, 234.

[8]Pub. L. No. 97-252, 96 Stat. 730 (codified as amended at 10 U.S.C. § 1408). The parties refer to the 1982 version of the statute; however, the relevant parts of the statute have not changed since 1982.

[9]10 U.S.C. § 1408(c)(1) (2000). Disposable retired pay refers to monthly retired pay minus statutory exceptions. *Id.* § 1408(a)(4).

[10]*Mansell I,* 490 U.S. at 583; *see also* 38 U.S.C. § 5305 (2000) (previously codified at 38 U.S.C. § 3105 (1988)).

[11]490 U.S. at 589.

retirement pay, he argues that *Mansell I* prevents any payments to Maryann, thus depriving her of her community property interest in Roland's pension. Based on the cases decided after *Mansell I,* we do not agree.

Many courts have determined that a recipient of military disability payments may not deprive a former spouse of marital property.[12] The courts proceed under various theories, but the underlying theme is that it is unfair for a veteran spouse to unilaterally deprive a former spouse of a community property interest simply by making an election to take disability pay in lieu of retirement pay.[13] Although states cannot divide disability payments as community property, states are not preempted from enforcing orders that are res judicata[14] or from enforcing contracts[15] or from reconsidering divorce decrees,[16] even when disability pay is involved.

In *Poullard v. Poullard,* the Louisiana Court of Appeal held that the husband had stipulated to give his former wife one half of his retirement pay in consideration of her alimony waiver.[17] The court held that "[n]othing in either the state or federal law prevents a person from agreeing to give a part of his disability benefit to another. . . . [T]he re-designation of pay cannot defeat the prior agreement of the parties."[18]

In *Hisgen v. Hisgen,* the Supreme Court of South Dakota enforced a property settlement agreement, stating:

> That case [*Mansell I*], however, does not preclude state courts from interpreting divorce settlements to allow a spouse to receive property or money equivalent to half a veteran's retirement entitlement. "[T]he source of the payments need not come from his exempt disability pay; the husband is free to

---

[12]*In re Marriage of Mansell,* 265 Cal. Rptr. 227 (Ct. App. 1989) (*Mansell II*), *cert. denied,* 498 U.S. 806 (1990); *Ford v. Ford,* 783 S.W.2d 879 (Ark. Ct. App. 1990); *McHugh v. McHugh,* 861 P.2d 113 (Idaho Ct. App. 1993); *Adams v. Adams,* 725 A.2d 824 (Pa. Super. Ct. 1999); *Trahan v. Trahan,* 894 S.W.2d 113 (Tex. App. 1995); *Owen v. Owen,* 419 S.E.2d 267 (Va. Ct. App. 1992); *In re Marriage of Jennings,* 980 P.2d 1248 (Wash. 1999).

[13]Virtually any military retiree eligible for disability will elect to receive disability pay rather than retirement pay since disability pay is not subject to federal, state and local taxation, and thus increases the recipient's after-tax income. 38 U.S.C. § 5301(a) (2000) (previously codified at 38 U.S.C. § 3101(a) (1988)); *Mansell I,* 490 U.S. at 583-84.

[14]*Mansell II,* 265 Cal. Rptr. at 227; *Ford,* 783 S.W.2d at 879; *Trahan,* 894 S.W.2d at 113.

[15]*Adams,* 725 A.2d at 824; *McHugh,* 861 P.2d at 113; *Owen,* 419 S.E.2d at 267.

[16]*Marriage of Jennings,* 980 P.2d at 1248.

[17]780 So. 2d 498, 499-500 (La. Ct. App. 2001).

[18]*Id.* at 500 (internal quotation marks omitted).

satisfy his obligations to his former wife by using other available assets."[19]

The question of the interpretation of a contract when the facts are not in dispute is a question of law.[20] "A contract is ambiguous if it is reasonably susceptible to more than one interpretation."[21] The best approach for interpreting an ambiguous contract is to delve beyond its express terms and "examine the circumstances surrounding the parties' agreement in order to determine the true mutual intentions of the parties."[22] This examination includes not only the circumstances surrounding the contract's execution, but also subsequent acts and declarations of the parties.[23] Also, a specific provision will qualify the meaning of a general provision.[24] Finally, "[a]n interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract."[25]

The property settlement agreement between Roland and Maryann is ambiguous. The agreement states that Roland's military disability is community property, but it awards the entire amount to Roland. The award of military retirement pay to Maryann describes the award as "[o]ne half of HUSBAND'S military retirement in the amount of $577, until her demise," but the amount designated is more than one-half the amount of Roland's retirement pay at the time. Roland paid Maryann $577 until the time he elected to take disability pay in lieu of retirement pay.

It appears, therefore, that the agreement of the parties was that Roland pay Maryann $577 each month for her portion of the community asset, rather than pay her one-half of his retirement pay, since $577 is more specific than "one-half." Moreover, the parties' subsequent conduct reinforces this conclusion, in that Roland ratified the terms of the agreement by performing his obligations

[19]554 N.W.2d 494, 498 (S.D. 1996) (quoting *Holmes v. Holmes,* 375 S.E.2d 387, 395 (Va. Ct. App. 1988)).

[20]*Grand Hotel Gift Shop v. Granite St. Ins.,* 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).

[21]*Margrave v. Dermody Properties,* 110 Nev. 824, 827, 878 P.2d 291, 293 (1994); *see also Pressler v. City of Reno,* 118 Nev. 506, 509-10, 50 P.3d 1096, 1098 (2002).

[22]*Hilton Hotels v. Butch Lewis Productions,* 107 Nev. 226, 231, 808 P.2d 919, 921 (1991).

[23]*See Trans Western Leasing v. Corrao Constr. Co.,* 98 Nev. 445, 447, 652 P.2d 1181, 1183 (1982).

[24]*See Mayer v. Pierce County Medical Bureau,* 909 P.2d 1323, 1327 (Wash. Ct. App. 1995).

[25]*Dickenson v. State, Dep't of Wildlife,* 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994).

under the decree for a period of two years.[26] In addition, this interpretation yields a fair and reasonable result, as opposed to a harsh and unfair result. Roland cannot escape his contractual obligation by voluntarily choosing to forfeit his retirement pay.[27] It appears that Roland possesses ample other assets from which to pay his obligation without even touching his disability pay. Even if he lacks these assets, nothing prevents him from using his disability payments to satisfy his contractual obligation.[28]

## CONCLUSION

Although states are precluded by federal law from treating disability benefits as community property, states are not precluded from applying state contract law, even when disability benefits are involved. The district court's order is reversed and this matter is remanded to the district court for further proceedings consistent with this opinion.

AGOSTI, C. J., and BECKER, J., concur.

---

[26]*Hoskins v. Skojec,* 696 N.Y.S.2d 303, 304 (App. Div. 1999).

[27]*Dexter v. Dexter,* 661 A.2d 171, 174-75 (Md. Ct. Spec. App. 1995) (holding that under Maryland contract law, ''the pensioned party may not hinder the ability of the party's spouse to receive the payments she has bargained for, by voluntarily . . . waiving . . . the pension benefits''); *Johnson v. Johnson,* 37 S.W.3d 892, 897 (Tenn. 2001) (holding that the spouse's ''vested interest cannot thereafter be unilaterally diminished by an act of the military spouse,'' and that the trial court must enforce the decree to provide the spouse with guaranteed monthly payment).

[28]*Poullard,* 780 So. 2d at 500 (holding that ''[n]othing in either state or federal law prevents a person from agreeing to give part of his disability benefit to another'').