# IN THE SUPREME COURT OF THE STATE OF NEVADA

ERIC HOLYOAK,
Appellant,
vs.
TONI HOLYOAK,
Respondent.

No. 67490

FILED

MAY 19 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a post-divorce decree order regarding the distribution of retirement benefits. Eighth Judicial District Court, Clark County; Vincent Ochoa, Judge.

In 1982, appellant Eric Holyoak and respondent Toni Holyoak married. In 2008, they divorced. Appellant was a police officer employed by the Las Vegas Metropolitan Police Department and a participant in the Public Employees Retirement System (PERS). During the divorce proceedings, he was not yet eligible for retirement.

Neither party was represented by an attorney during the divorce proceedings. Further, both parties executed a joint petition for summary decree of divorce, which they amended twice. The petition divided their community property through a memorandum of understanding (MOU), which they mediated with the assistance of a former family court judge. With regard to appellant's PERS retirement account, the MOU stated: "The parties agree to split the costs of the preparation of a [qualified domestic relations order (QDRO)]. The QDRO will direct the trustee of PERS to pay to each party their proportionate

16-15843

share of the account at the time [appellant] retires." Ultimately, the parties disputed the meaning of this clause before the district court.

Appellant filed a brief detailing his position on several issues relevant to the division of community property, including when he was required to pay respondent's share of the PERS benefits.[1] According to appellant, pursuant to the applicable clause in the MOU, both parties agreed that respondent will receive her share starting from the time of appellant's official retirement. In support of his argument, appellant filed a declaration stating that both parties agreed at the time of the mediation that respondent would not receive her share until appellant officially retired. However, appellant's counsel also acknowledged in an earlier proceeding that the clause in the MOU was simply "a one-sentence agreement" and that "what the two parties agreed to may have been completely different between the two of them in their minds as to what they were agreeing to." Respondent asserted that appellant's interpretation of the clause was incorrect and that Nevada caselaw supported her position that she can receive her share when appellant is eligible to retire. Before the district court, she also noted that one reason

---

[1]We note that, in general, a district court lacks jurisdiction to modify property rights, as established by a divorce decree, beyond six months. *See* NRCP 60(b); *Kramer v. Kramer*, 96 Nev. 759, 762, 616 P.2d 395, 397 (1980). However, because the district court in this case merely interpreted the decree and enforced its terms, rather than modifying the parties' interests, the time requirements of NRCP 60(b) do not apply. *See Walsh v. Walsh*, 103 Nev. 287, 288, 738 P.2d 117, 117-18 (1987) (interpreting rather than modifying pension plan provision of divorce decree outside NRCP 60(b)'s six-month period). Further, the MOU was incorporated into the divorce decree, and the district court has inherent authority to construe its decrees in order to remove an ambiguity. *See Kishner v. Kishner*, 93 Nev. 220, 225, 562 P.2d 493, 496 (1977).

for accepting a low amount in spousal support "was her understanding that she would receive her portion of the PERS retirement for the rest of her life." In addition, respondent claimed that she was "under the impression that [appellant] would be retiring sooner than later."

With regard to this issue, the district court ruled in favor of respondent. The district court determined that nothing in the MOU or the divorce decree "indicates any intention on the part of any person involved to do anything other than what the law provides and divide the community portion of all assets equally." Further, the court noted that according to the MOU, respondent "is to receive a 'proportionate share' of [appellant's] Nevada PERS pension benefits" and that this language "was intended to comply with Nevada law." Applying Nevada precedent concerning election of retirement benefits, the court concluded that respondent had an interest in appellant's retirement pension starting from the date of his eligibility. However, the district court noted that respondent must first file a motion "requesting to begin receiving payment of her portion" of the PERS pension benefits.

Following the district court's order, respondent filed a motion for immediate election of her share of appellant's PERS benefits. Ultimately, the court granted the motion, reiterating its previous decision that respondent is entitled to receive her share starting from the date of appellant's eligibility. This appeal follows.[2]

---

[2]We note that in her answering brief, respondent raises issues concerning alleged errors in this court's precedent on survivorship rights. However, respondent did not file a cross-appeal, and thus lacks the ability to challenge the district court's ruling on these issues.

Generally, this court reviews the district court's division of community property for an abuse of discretion. *Wolff v. Wolff*, 112 Nev. 1355, 1359, 929 P.2d 916, 918-19 (1996). Further, this court reviews a district court's factual findings for an abuse of discretion, and will not set aside those findings unless they are clearly erroneous or not supported by substantial evidence. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). When a district court's interpretation of a divorce decree involves a question of law, however, this court reviews the interpretation de novo. *Henson v. Henson*, 130 Nev., Adv. Op. 79, 334 P.3d 933, 936 (2014).

An agreement to settle pending divorce litigation constitutes a contract and is governed by the general principles of contract law. *Grisham v. Grisham*, 128 Nev., Adv. Op. 60, 289 P.3d 230, 234 (2012). In the context of family law, parties are permitted to contract in any lawful manner. *See Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009). "Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy." *Id.* An enforceable contract requires "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

Further, this court views a contract as "ambiguous if it is reasonably susceptible to more than one interpretation." *Shelton v. Shelton*, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (internal quotation and footnote omitted). When interpreting an ambiguous contract, this court looks beyond the express terms and analyzes the circumstances surrounding the contract to determine the true mutual intentions of both parties. *Id.* (footnote omitted). Finally, this court has recognized that an

interpretation that "results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract." *Id.* (internal quotation and footnote omitted).

With regard to retirement benefits, those earned during a marriage qualify as community property, even if they are not vested. *Gemma v. Gemma*, 105 Nev. 458, 460-61, 778 P.2d 429, 430 (1989). While the effect of a contract on the timing of a nonemployee spouse's receipt of benefits has not yet been explored, this court has discussed the issue of when a nonemployee spouse is entitled to request his or her share of benefits. In particular, we have held that the nonemployee spouse has a right to his or her share of the employee spouse's benefits starting from the date of eligibility for retirement. *Id.* at 464, 778 P.2d at 432. Moreover, NRS 125.155 gives the court discretion to consider directing the employee spouse to pay the nonemployee spouse his or her share of PERS benefits at the first eligible retirement date or to order that the nonemployee spouse wait until the employee spouse actually retires. *See* NRS 125.155(2).

Here, while part of the district court's analysis is mistaken, the outcome of its order is correct. The clause in the MOU provides that "[t]he QDRO will direct the trustee of PERS to pay to each party their proportionate share of the account at the time [appellant] retires." The district court did not expressly acknowledge the ambiguity of this clause, but we conclude that it is ambiguous because it is reasonably susceptible to more than one interpretation. Appellant interprets the phrase "at the time [appellant] retires" as an agreed-upon determination of the time when respondent is eligible to receive her share. In contrast, respondent contends that the phrase, within the context of the entire clause, pertains

to the time of disbursement of the payments; the clause is merely a procedural instruction to the trustee of PERS to pay the proportionate share after appellant retires. Respondent asserts that the clause does not prohibit her from directly seeking her share from appellant, which is how pre-retirement payments are standardly made. Accordingly, the calculation of the proportionate share is based on the employee spouse's eligibility for retirement, and if the employee spouse does not retire when he is eligible, he must pay the nonemployee spouse the amount that the nonemployee spouse would have received if the employee spouse had retired at that time.

In this case, appellant's interpretation ultimately lacks merit because it results in a harsh and unreasonable contract. The record does not sufficiently show that respondent intended to wait until appellant officially retired to collect her share, and this court has repeatedly held that the nonemployee spouse has a right to her share as soon as the employee spouse is eligible to retire. Upon consideration of the circumstances surrounding the MOU and in light of precedent from this court, we conclude that respondent's interpretation results in a fair and reasonable contract. Even though the district court dismissed the ambiguous nature of the clause in the MOU, its decision was nevertheless correct. *See Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) ("[T]his court will affirm the order of the district court if it reached the correct result, albeit for different reasons"). Thus, the district court properly ruled that respondent was entitled to receive her share starting from the time that appellant was eligible to retire. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

cc:    Hon. Vincent Ochoa, District Judge
Carolyn Worrell, Settlement Judge
Neil J. Beller, Ltd.
Willick Law Group
Eighth District Court Clerk

PICKERING, J., dissenting:

The parties mediated the issues regarding dissolution of their marriage before Robert E. Gaston, who served for eight years as a district court judge, family court division, before establishing an alternative dispute resolution service dedicated to civil and domestic court cases.[1] Their mediation culminated in a written settlement agreement, prepared under the supervision of Judge Gaston, which they signed on May 20, 2008. Addressing retirement/investment accounts, specifically, Eric's retirement account with PERS, the settlement agreement states that the parties will split the costs of preparing a QDRO, and that the QDRO "will

---

[1]*See Settlement Judge Biographies: Robert E. Gaston*, Nev. Cts., http://nvcourts.gov/Settlement_Program/Biographies/Gaston,_Robert_E_/ (last visited May 12, 2016). I thus do not agree that the parties did not know what they were signing. Right above their signatures, in fact, the following paragraph appears:

> The above Memorandum of Understanding reflects agreements formulated in mediation on the 20th day of May, 2008. By signing this document each party stipulates and agrees that they have carefully read this document, and the document accurately reflects the agreement that each party has entered into on this day, and that each party voluntarily signs this agreement without undue influence, coercion or threat. Both parties represent that they are of sufficient capacity to understand and enter into this agreement. The parties agree that this Memorandum of Understanding represents what each believes to be a fair and reasonable resolution of the issues. Both parties acknowledge the fact that they had the right to have legal counsel, but have waived that right.

direct the trustee of PERS to pay each party their proportionate share of the account at the time Eric retires." A straightforward reading of this clause suggests that the payments occur "at the time Eric retires," not, as the majority would have it, at the time Eric becomes eligible to retire.

"A settlement agreement is a contract governed by general principles of contract law"; when a settlement agreement's "language is unambiguous, this court will construe and enforce it according to that language." *The Power Co. v. Henry*, 130 Nev., Adv. Op. 21, 321 P.3d 858, 863 (2014). As I do not see the settlement agreement as ambiguous, I would enforce it as written. I therefore respectfully dissent.

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A