135 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

RICHARD KILGORE,
Appellant/Cross-Respondent,
vs.
ELENI KILGORE,
Respondent/Cross-Appellant.

No. 73977

**FILED**

OCT 03 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal and cross-appeal from orders resolving a motion to allocate omitted assets and modifying a divorce decree as it relates to PERS retirement benefits. Eighth Judicial District Court, Family Court Division, Clark County; Cheryl B. Moss, Judge.

*Affirmed.*

Law Office of Betsy Allen and Betsy Allen, Las Vegas,
for Appellant/Cross-Respondent.

Page Law Office and Fred Page, Las Vegas,
for Respondent/Cross-Appellant.

BEFORE PICKERING, PARRAGUIRRE and CADISH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we review the district court's distribution of community property upon Richard Kilgore and Eleni Kilgore's divorce. Specifically, we consider whether the district court abused its discretion or otherwise erred when it concluded that Eleni was entitled to her community

19-41011

property share of Richard's pension benefits even though Richard had not yet retired, reduced this amount to judgment, and ordered Richard to pay Eleni a monthly amount it deemed fair. We also consider whether the district court erred when it concluded that Richard's vacation and sick pay were omitted from the divorce decree and thereafter divided them equally between Richard and Eleni.

We hold that a district court has significant discretion when determining whether to grant or deny a non-employee spouse's request for pension payments before the employee spouse has retired and conclude that the district court did not abuse that discretion here. Further, the district court did not err in considering the omitted assets and dividing them equally between the parties.

## FACTS

Richard Kilgore and Eleni Kilgore were married in December 1992. During their marriage, both worked for Clark County—Richard as a marshal and Eleni as a teacher—and received retirement benefits through the Nevada Public Employees' Retirement System (PERS). They divorced in March 2013, and the divorce decree provided for the division of each party's PERS benefits in accordance with applicable caselaw.[1] The decree did not address vacation or sick pay earned and accrued during the marriage.

In March 2015, Eleni moved the district court to compel Richard to begin paying her share of his PERS benefits because he had become eligible for retirement. She also requested a one-half interest in Richard's

---

[1]The divorce decree also resolved child custody, visitation, and support issues involving Richard's and Eleni's three minor children, none of which are disputed in this appeal.

vacation and sick pay earned and accrued during their marriage, noting that such assets were omitted from the divorce decree. In June 2015, the court temporarily denied Eleni's request for payment because Richard had been terminated from his position as a marshal and earned no other income. The court also deferred resolving the vacation and sick pay issue.

Also in June 2015, the district court entered a qualified domestic relations order (QDRO) dividing Richard's PERS benefits and a QDRO dividing Eleni's PERS benefits. The QDRO dividing Richard's PERS benefits recognized Richard as the participant in PERS and Eleni as the alternate payee. It "assign[ed] to Eleni[ ] the right to receive a portion of the benefits payable to a plan Participant" "at the first possible date."

Richard was reinstated as a marshal in January 2016. Shortly thereafter, the district court ordered him to start paying Eleni $1,200 per month toward her share of his PERS benefits. Richard argued that he planned to work until his PERS account reached full maturity and should not be obligated to pay until he retires. Over the course of 2016 and 2017, the court held a series of evidentiary hearings and status checks to resolve the dispute, and spent a significant amount of time reviewing Richard's financial situation.

In July 2017, the district court concluded that because Richard was eligible to retire in 2011, Eleni was entitled to her share of Richard's PERS benefits even though he had not yet retired. It acknowledged, however, that PERS would not pay Eleni anything until Richard retired. It therefore calculated the amount Richard owed to Eleni, retroactive to the date of Eleni's motion in March 2015, and reduced that sum to judgment, collectible by any lawful means. Having extensively reviewed Richard's financial situation, it ordered Richard to pay Eleni $350 per month toward

the judgment, instead of the $2,455 per month it calculated Eleni would have received from PERS had Richard retired.[2] The district court also ordered Richard to pay Eleni for vacation and sick pay that he earned during their marriage.[3] Richard's timely appeal and Eleni's cross-appeal followed.

## DISCUSSION

Richard challenges the district court's finding that Eleni is entitled to PERS benefits even though he has not yet retired. On cross-appeal, Eleni challenges the district court's reduction of monthly payments. Richard also challenges the district court's ruling on vacation and sick pay.

This appeal requires review of the district court's distribution of community property and its factual findings and conclusions of law. We review the district court's distribution of Richard's PERS benefits and vacation and sick pay deferentially for an abuse of discretion. *See Wolff v. Wolff*, 112 Nev. 1355, 1359, 929 P.2d 916, 919 (1996). "This court's rationale for not substituting its own judgment for that of the district court, absent

---

[2]Specifically, the district court concluded, in part, as follows:

> For the relevant time period established at trial for the PERS retirement benefits in Richard's name that should have been paid to Eleni, the total accrued and owing to Eleni is $54,003.62 principal plus $2,572.14 of pre-judgment interest for a grand total of $56,575.76. Said amount is reduced to judgment and collectible by any lawful means. However, execution on Richard's paychecks is stayed and Richard shall pay Eleni $350.00 per month from January 2017 forward into her . . . bank account.

[3]The district court calculated that this amount was one-half of $8,635.70 minus taxes.

an abuse of discretion, is that the district court has a better opportunity to observe parties and evaluate the situation." *Id.* Further, we review a district court's factual findings deferentially and will not set them aside unless they are clearly erroneous or not supported by substantial evidence. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). Conclusions of law, however, we review de novo. *Dewey v. Redev. Agency of Reno*, 119 Nev. 87, 93, 64 P.3d 1070, 1075 (2003).

*The district court's distribution of Richard's PERS benefits*

Richard's primary argument on appeal is that the district court erred when it ordered him to begin paying Eleni PERS benefits even though he had not yet retired. He argues that an employee spouse who chooses to work past the date of first eligibility in order to maximize a PERS account should not be compelled to pay the non-employee spouse anything until retirement.

Eleni responds that Richard was first eligible to retire in 2011, and therefore the district court appropriately ordered Richard to start payment upon her request. Nonetheless, she argues on cross-appeal that the district court erred when it ordered Richard to pay her only $350 per month. She argues that, under the QDRO, she is entitled to the full amount of benefits she would have received from PERS had Richard retired. Finally, she argues that the district court's refusal to compel Richard to pay the full monthly amount of his PERS benefits amounts to an unequal distribution of property in violation of NRS 125.150(1)(b).

We have long held that "retirement benefits earned during the marriage are community property." *Walsh v. Walsh*, 103 Nev. 287, 288, 738 P.2d 117, 117 (1987). In *Gemma v. Gemma*, we clarified that "[t]his is so even though the retirement benefits are not vested." 105 Nev. 458, 461, 778 P.2d 429, 430 (1989). We therefore held that a non-employee spouse may

SUPREME COURT
OF
NEVADA

(O) 1947A

5

elect to receive a community property share of pension benefits when the employee spouse is first eligible to retire, regardless of when the employee spouse chooses to retire. *Id.* at 464, 778 P.2d at 432 (upholding the district court's determination that the non-employee spouse was entitled to receive her interest in the employee spouse's retirement pension, even though he continued to work and his pension rights had not fully vested). We further held that because pension benefits are a community asset, an employee spouse should not be able to "defeat the non-employee spouse's interest in the community property by relying on a condition solely within the employee spouse's control," i.e., the retirement date. *Id.* at 463-64, 778 P.2d at 432 (quoting *In re Marriage of Luciano*, 164 Cal. Rptr. 93, 95 (Ct. App. 1980)). Thus, under *Gemma*, a district court has discretion to order pension payments at the employee spouse's first eligibility for retirement, even if the employee spouse has not yet retired.

NRS 286.510 provides the date at which an employee spouse is first eligible to retire without suffering a reduction of benefits. First eligibility varies depending on an employee spouse's effective date of membership in PERS, profession, number of years served, and age. Whether the employee spouse's PERS account has fully matured is not a factor provided in NRS 286.510 for determination of first eligibility.

In accordance with *Gemma* and NRS 286.510, the district court here determined that Richard, who served as a marshal for over 20 years, was first eligible to retire when he turned 50 years old in 2011, even though his PERS account had not reached full maturity. *See* NRS 286.510(2)(a) (A police officer or firefighter with at least 20 years of service is eligible to retire at age 50 with an unreduced pension.). It therefore concluded that Eleni was entitled to payment any time after 2011. In order to start

receiving payment, *Henson v. Henson* requires that the non-employee spouse "file a motion in the district court requesting immediate payment of his or her portion of the employee spouse's pension benefits." 130 Nev. 814, 823, 334 P.3d 933, 939 (2014). Eleni filed a motion requesting payment in March 2015. Accordingly, the district court did not err when it concluded that Eleni was entitled to her community property share of Richard's PERS benefits dating back to March 2015.

The more difficult question, however, is whether the district court abused its discretion when it reduced the amount of PERS benefits owed to Eleni to judgment and ordered Richard to pay Eleni only $350 per month toward that judgment. To answer this question, we consider *Gemma* in light of NRS 125.155, which was enacted six years after *Gemma*'s publication.

NRS 125.155 governs the valuation and distribution of PERS benefits. It provides, in relevant part, as follows:

> The court *may*, in making a disposition of a pension or retirement benefit provided by the Public Employees' Retirement System or the Judicial Retirement Plan, order that the benefit not be paid before the date on which the participating party retires.

NRS 125.155(2) (emphasis added). By using permissive language, the Legislature unambiguously provided district courts with the discretion to deny a non-employee spouse's request for pension payments before the employee spouse's retirement.[4] Implicit in the power to deny a non-

_____

[4]Because NRS 125.155's meaning is clear from its plain language, we need not rely on its legislative history. *Loomis v. Whitehead*, 124 Nev. 65, 69, 183 P.3d 890, 892 (2008). We note, however, that the Legislature enacted NRS 125.155 to correct the assumption that *Gemma mandates* a

employee spouse's pension payments is the lesser power to reduce such payments. We therefore hold that while *Gemma* permits a district court to order pension payments at first eligibility, it does not mandate such an order. NRS 125.155 clarifies that a district court may deny or reduce such payments if the employee spouse has not yet retired.

Under this framework, a district court has discretion when determining how, and to what extent, to accommodate a non-employee spouse's request for pension payments before the employee spouse's retirement. We caution that NRS 125.155(2)'s broad grant of discretion is not unlimited. Overriding principles of equity and fairness govern a district court's exercise of discretion. *See, e.g.*, NRS 125.150(1)(b) (A court must make an equal disposition of community property except where "it deems just" upon finding "a compelling reason to" make an unequal disposition.). Further, *Gemma* and its progeny provide clear guidelines that a district court must follow when exercising that discretion. *See Gemma*, 105 Nev. at 459, 778 P.2d at 430 (requiring that a non-employee spouse wait until the employee spouse is first eligible to retire before requesting PERS benefits); *see also Henson*, 130 Nev. at 823, 334 P.3d at 939 (requiring a non-employee spouse to file a formal motion requesting immediate receipt of PERS benefits); *Sertic v. Sertic*, 111 Nev. 1192, 1194, 901 P.2d 148, 149 (1995) (affirming that a district court may order distribution of PERS benefits at, and not before, the employee spouse's first eligibility to retire).

---

district court to order public employees, specifically police officers and firefighters, to start pension payments upon first eligibility. Hearing on A.B. 292 before the Senate Judiciary Comm., 68th Leg. (Nev., June 26, 1995) (explaining the disparate treatment of police officers and firefighters under *Gemma* because of their early retirement eligibility and discussing the need for legislative clarity in light of *Gemma*).

With these holdings in mind, we conclude that the district court acted within its discretion when it reduced the sum that Richard owed Eleni to judgment and ordered Richard to pay a monthly amount it deemed fair. After determining that Eleni was entitled to her community property share of Richard's PERS benefits dating back to March 2015, the district court calculated the total amount owed to Eleni for past PERS payments. In accordance with established law, the court calculated that Eleni would have received $2,455 per month from PERS had Richard retired. It then determined that the outstanding amount owed to Eleni from March 2015 until early 2017, the date of the last proceeding on this matter, was $56,575.76. We discern no abuse of discretion or error in the district court's calculation.[5]

Next, having established that the amount owed to Eleni was $56,575.76, the district court reduced this amount to judgment, collectible by any lawful means. In similar contexts, we have affirmed that a district court has discretion to enter a judgment for support arrearages in a divorce proceeding. *See Libro v. Walls*, 103 Nev. 540, 541, 746 P.2d 632, 633 (1987) (holding that "[e]ntry of judgment for support arrearages under NRS 125.180 is discretionary"). We have also held that within that authority lies the discretion to schedule payments of the judgment "in any manner the district court deems proper under the circumstances." *Reed v. Reed*, 88 Nev. 329, 331, 497 P.2d 896, 897 (1972) (upholding the district court's order enforcing its judgment for child support arrearages at a rate not exceeding $50 per month).

---

[5]Neither Richard nor Eleni challenge the district court's calculation of the community's share of PERS benefits.

Here, the district court held numerous hearings and status checks to ensure a fair arrangement under the circumstances of Richard's and Eleni's divorce. It extensively analyzed Richard's financial obligations, including $1,500 monthly child support payments to Eleni, as well as basic living expenses ranging from car insurance to the cost of yard maintenance. The district court found that if Richard were required to pay Eleni $2,455 per month in addition to his current obligations, he would be unable to afford basic living expenses and forced into early retirement, which it acknowledged is contrary to public policy. It also found that if this amount were garnished from Richard's paycheck, Richard would be left with less than half of his paycheck, which it acknowledged violates garnishment laws.

The district court calculated that Eleni, in contrast, enjoyed a net income, after expenses, of over $1,000 per month. Nonetheless, it determined that Eleni was entitled to her community property interest in Richard's PERS benefits. After balancing these competing interests, the court stayed any collection on the judgment from Richard's paycheck, and instead ordered Richard to pay Eleni a reduced rate of $350 per month toward the judgment. Because the district court based its distribution of community property on substantial evidence, which is extensively documented in the record, we conclude that it did not abuse its discretion. We further conclude that the court appropriately balanced the public policy

and community property interests involved in this case and thus defer to its sound judgment.[6]

We recognize that by enforcing its judgment in this manner, the district court provided for the distribution of Richard's PERS benefits in a manner not expressly authorized in the QDRO.[7] Importantly, however, the district court "retain[ed] jurisdiction to enter such further orders as are necessary to enforce the award of benefits as specified [in the QDRO]." *See Gemma*, 105 Nev. at 462, 778 P.2d at 432 (holding that a court may modify or adjust division of pension benefits if it "specifically retains jurisdiction"). After closely analyzing Richard's expenses, the court determined that it was necessary to order payments on the judgment at a reduced monthly rate. In doing so, the district court did not modify Eleni's community property interest in Richard's PERS benefits, and she is still entitled to the full amount owed to her for the specified period. The district court thus accommodated Richard's current financial situation while ensuring that Eleni would eventually receive the full amount awarded to her in the judgment.[8] We conclude that this was necessary, fair, and equitable.

---

[6]We are therefore unpersuaded by Richard's argument that in exercising its discretion, the district court unfairly penalized Richard and deterred continued employment.

[7]The QDRO provides, in relevant part, that if Richard does not retire upon first eligibility, he must pay Eleni "the sum required by this Order, no later than the fifth day of each month," until PERS payments commence. It does not provide specific guidance as to how a district court should execute and enforce such payments, nor do statutes or caselaw.

[8]Because the order did not change Eleni's community property interest in Richard's PERS benefits, and because neither party disputed the district court's division of Richard's PERS benefits in the divorce decree, we

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, we hold that the district court did not abuse its discretion or err when it calculated the amount of PERS benefits owed to Eleni for the specified period, reduced that amount to judgment, and ordered Richard to pay Eleni a monthly amount it deemed fair.[9] We note, however, that the district court's order accounts for PERS benefits owed to Eleni only "[f]or the relevant time period established at trial," i.e., March 2015 until early 2017. To receive payment for PERS benefits owed after that period, Eleni will need to seek relief from the district court. We leave the ongoing distribution of Richard's PERS benefits to the district court, which expressly retained jurisdiction over this matter.

*The district court's division of Richard's vacation and sick pay*

Finally, Richard argues that the district court erred when, four years after the divorce decree, it equally divided the vacation and sick pay he earned and accrued during the marriage. He argues that because Eleni could have raised this issue at the time of the divorce, res judicata precluded division of this property. Richard also argues that vacation and sick pay are not community property because they amount to future wages, and are thus earned after divorce. We disagree.

---

are unpersuaded by Eleni's argument that the order resulted in the unequal distribution of community property.

[9]We are unpersuaded by Richard's remaining arguments. Specifically, we conclude that the district court did not abuse its discretion when it refused to offset Richard's payments with his future interest in Eleni's PERS benefits. Richard is not yet entitled to his share of Eleni's PERS benefits because Eleni is not eligible to retire under NRS 286.510 and *Gemma*. Therefore, any offset would be premature under existing law. We also decline Richard's invitation to expand our existing caselaw to require such an offset. Because district courts have broad discretion in divorce proceedings, we will not mandate such an offset and risk interfering with the district court's delicate balancing of interests.

Richard relies on *Doan v. Wilkerson*, 130 Nev. 449, 456, 327 P.3d 498, 503 (2014), in which this court barred an appellant from seeking division of a community asset that was mistakenly left out of the divorce decree, absent a showing of extraordinary circumstances justifying equitable relief. NRS 125.150(3), however, expressly abrogates our holding in *Doan*. *See* Hearing on A.B. 362 Before the Assembly Judiciary Comm., 78th Leg. (Nev., April 1, 2015) (acknowledging that in *Doan*, the court could not provide relief to the appellant for a mistakenly omitted asset, and explaining that Assembly Bill 362, now codified as NRS 125.150(3), was intended to provide such a remedy).

> NRS 125.150(3) provides, in relevant part, as follows:
>
> A party may file a postjudgment motion in any action for divorce, annulment or separate maintenance to obtain adjudication of any community property or liability omitted from the decree or judgment as the result of fraud or mistake. A motion pursuant to this subsection must be filed within 3 years after the discovery by the aggrieved party of the facts constituting the fraud or mistake. The court has continuing jurisdiction to hear such a motion and shall equally divide the omitted community property or liability between the parties . . . .

Thus, under NRS 125.150(3), a party can seek adjudication of an asset mistakenly omitted from the divorce decree within three years of discovering the mistake.

Eleni moved the district court to adjudicate the vacation and sick pay as omitted assets in June 2015, roughly two years after the decree of divorce, arguing that they were omitted by mistake. At a hearing conducted in December 2016, Richard admitted that the parties did not discuss his vacation or sick pay during the divorce proceedings. Based on

this and other trial testimony, the district court found that the vacation and sick pay were omitted assets under NRS 125.150(3) and concluded that Eleni was therefore entitled to file a post-judgment motion for distribution. Because the district court's findings are supported by substantial evidence and consistent with current law, we discern no abuse of discretion or error.

We further conclude that the district court did not abuse its discretion when it equally divided the vacation and sick pay earned and accrued during the marriage. Vacation and sick pay are forms of deferred compensation. If the work is performed during the marriage, compensation for that work belongs to the community. We find support for this conclusion in other community property jurisdictions. *See, e.g., Suastez v. Plastic Dress-Up Co.*, 647 P.2d 122, 125 (Cal. 1982) ("This court, too, has adopted the view that vacation pay is simply a form of deferred compensation."); *Arnold v. Arnold*, 77 P.3d 285, 290 (N.M. Ct. App. 2003) ("[T]he district court properly determined Husband's unused vacation leave and unused sick leave to be community property and divisible upon divorce.").

Nonetheless, Richard argues that because he will ultimately receive payment for unused vacation and sick days after the marriage, it is his separate property. This argument belies the substantial body of caselaw that characterizes vacation and sick pay as deferred compensation. *See Suastez*, 647 P.2d at 125 (listing cases). Moreover, it ignores the underlying presumption that benefits earned during a marriage are community property, regardless of when they are realized. *See Arnold*, 77 P.3d at 290 ("The essence of leave is that it is a benefit of employment and, whether considered a benefit in addition to salary, or somehow an aspect of salary, it has independent value.").

Therefore, we hold that vacation and sick pay earned and accrued during a marriage are community property and subject to equal division under NRS 125.150(1)(b). Thus, the district court did not abuse its discretion when it characterized Richard's vacation and sick pay earned and accrued during the marriage as omitted assets under NRS 125.150(3) and distributed them equally.

Accordingly, we affirm the district court's orders in all respects.

_____, J.
Parraguirre

We concur:

_____, J.
Pickering

_____, J.
Cadish